**KEYSTONE INSURANCE COMPANY, Appellant,**

v.

**HOUGHTON, Joseph, Houghton, Donna Livoy, Cassidy, John, Cassidy, Kathleen, Livoy, Frank.**

No. 88–1405.

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1988.

Decided Dec. 15, 1988.

Thomas Colas Carroll, M. Patricia Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellees, Joseph Houghton and Donna Houghton.

Elizabeth K. Ainslie (argued), Ainslie & Schenck, Philadelphia, Pa., for appellant.

Before HIGGINBOTHAM, MANSMANN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

We are presented in this civil RICO action with the facial issue of whether Keystone Insurance Company's cause of action against their insureds who filed fraudulent claims is barred by the civil RICO four year statute of limitations. We must perforce address the complex threshold problem of when a civil RICO cause of action accrues, an issue which the Supreme Court reserved in *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987).

The rule which we announce provides that the limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern. In that case, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same "pattern."

We conclude here that Keystone's civil RICO claim is not barred by the statute of limitations because it was filed within four years of the "Houghton enterprise's" last predicate act, which was a part of the same pattern of racketeering activity which injured Keystone.[1] We will, therefore, reverse the district court on the statute of limitations issue, 692 F.Supp. 466, and remand for entry of judgment in favor of Keystone.

### I.

On November 19, 1977, Joseph and Donna Houghton were involved in a minor automobile accident in Cherry Hill, New Jersey. This accident generated fraudulent claims against Keystone, which was Donna Houghton's insurer, and against other insurance companies. Keystone subsequently paid $25,330.75 to Donna Houghton and to her doctors and lawyers. The last check issued by Keystone with regard to this accident was issued on July 10, 1980. The last mailing of record related to the November, 1977 accident is a medical authorization dated December 28, 1982, signed by Donna Houghton and addressed to Keystone. Although Keystone later agreed to settle with Donna Houghton over the November, 1977 claim, Keystone initially disputed the claim and had substantial doubts as to its legitimacy.

On July 7, 1980, John Cassidy drove his car off a Florida road and into a pole. The only witness to this accident was a "Thomas Cassidy", allegedly John Cassidy's brother, who was, in fact, Joseph Houghton. Fraudulent claims based on this accident were made to Keystone, Cassidy's insurer, and Keystone paid $14,280.26 on these claims. The last payment made by Keystone with regard to this accident was issued on March 3, 1981. A July 6, 1981, mailing to Keystone concerning the July, 1980 accident resulted in a conviction of Houghton Group members on mail fraud charges. In 1981 Keystone referred the July, 1980 accident claim to the Insurance Crime Prevention Institute because Keystone suspected fraud. In late 1980 or 1981 Keystone discovered that John Cassidy had made similar claims against other insurance companies. When Keystone refused to make further payments, it was sued by John Cassidy. Cassidy's lawsuit was still pending at the time of the Houghton Group's federal criminal trial in April, 1986.

---

**1.** We refer to all of the defendants collectively as the "Houghton Group" or the "Houghton enterprise."

Each member of the Houghton Group named in this case was indicted, with others, on mail fraud charges relating to the November, 1977 and July, 1980 accidents, and other instances of fraud against other insurance companies. Each was convicted. It appears from the record that the most recent mailing for which the Houghtons were convicted was the mailing of a claim form to an insurance company other than Keystone. This mailing occurred on September 19, 1983. The Houghton Group members in the criminal trial were sentenced on June 20, 1986, and Keystone filed this civil RICO claim one month later.

The district court held a non-jury trial and concluded that Keystone had proved each element of a civil RICO claim. The district court made several significant findings. It found that the July 10, 1980, payment, and not the December 28, 1982, letter signed by Donna Houghton, was the last predicate racketeering act which proximately caused injury to Keystone in connection with the November, 1977 accident. The court also found that by mid–1981 at the latest, Keystone knew that the claim for the July, 1980 accident involved fraud, and at that point knew, or should have known, of the last injury to Keystone caused by the Houghton Group's predicate acts.[2] Therefore, the district court entered judgment on the civil RICO claim for the Houghton Group, determining that Keystone knew or should have known of the last injury caused to Keystone by the Houghton Group's predicate acts by mid–1981 and that Keystone filed this action more than four years after that date.

On Keystone's appeal, we have appellate jurisdiction, pursuant to 28 U.S.C. § 1291, of this final judgment of the district court.

Our review involves a question of law, requiring us to state and apply the rule which governs the point at which the statute of limitations begins to accrue in a civil RICO case. Review of the interpretation and application of legal precepts is plenary. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.), *cert. denied,* 474 U.S. 906,

106 S.Ct. 275, 88 L.Ed.2d 236 (1985); *Gaines v. Amalgamated Ins. Fund,* 753 F.2d 288, 290 (3d Cir.1985); *United States v. Felton,* 753 F.2d 276, 278 (3d Cir.1985).

## II.

### A. *General Principles of the RICO Statute*

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), does not speak to the issue of when a claim under civil RICO accrues and we have not previously addressed this issue.

■ Determining when a federal cause of action accrues is a matter governed by federal common law. *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 197, n. 16 (3d Cir.1984). Federal courts, however, have not adopted a uniform rule for ascertaining when a civil RICO cause of action accrues. In *Malley–Duff* the Supreme Court, stressing the need for uniform application of federal law and the detrimental effects of forum shopping, adopted the four year statute of limitations applicable to civil enforcement actions under the Clayton Act (15 U.S.C. § 15b) for civil actions under RICO. *Malley–Duff* did not, however, present the Supreme Court with the opportunity to decide when a civil RICO cause of action accrues. ("Because it is clear that Malley–Duff's RICO claims accrued within four years of the time the complaint was filed, we have no occasion to decide the appropriate time of accrual for a RICO claim." 107 S.Ct. at 2767.).

■ It is generally the case that a claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong. A different rule would require insufficient diligence on the part of potential claimants. *See United States v. Kurbrick,* 444 U.S. 111, 122–23, 100 S.Ct. 352, 359–60, 62 L.Ed. 2d 259 (1979); *Sandutch v. Muroski,* 684

---

**2.** The point at which Keystone knew that the two accidents were related is not clear from the record before us. Given the disposition we give to this case, clarity on this point is not required.

F.2d 252, 254 (3d Cir.1982). *Lee v. United States,* 809 F.2d 1406, 1410 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). Given the unique elements required for a RICO claim, awareness that *each element* comprising a RICO claim is present is crucial while cognizance of the *legal* implication of these facts, that is, that there is a civil RICO cause of action, is irrelevant.

■ We have previously noted that the allegations necessary to support a RICO claim under 18 U.S.C. § 1962, as set forth in *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), are: (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity. For a private plaintiff, an additional element, injury to the plaintiff's business or property, is necessary to confer standing. *See Marshall–Silver Constr. Co., v. Mendel,* 835 F.2d 63, 65 (3d Cir. 1987) (citing *Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285).

Congress mandated that RICO "shall be liberally construed to effectuate its remedial purpose." Organized Crime Control Act, Pub.L. No. 91–452 § 904(a), 84 Stat. 942, 947 (1970) (codified at 18 U.S.C. § 1961 note (1982)). We have utilized this expansive congressional language to construe liberally RICO *provisions* as well as RICO as a whole. *See United States v. Sciarra,*

851 F.2d 621, 633 (3d Cir.1988); *United States v. Local 560 of Intern. Broth.,* 780 F.2d 267, 295 (3d Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *United States v. Kravitz,* 738 F.2d 102, 105 (3d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985); *United States v. Forsythe,* 560 F.2d 1127, 1135–36 (3d Cir.1977). The Supreme Court and other courts of appeals and district courts have done likewise.[3]

At a minimum the liberal construction language requires that we resist the temptation to restrict civil RICO.[4] *See* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L. Rev. 1101 (1982); Blakey and Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts and Criminal and Civil Remedies,* 53 Temple L.Q. 1009, 1031–33 (1980).

The Supreme Court has adopted an expansive tenor in describing the legislative history of civil RICO.

RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime. While few of the legislative statements about novel remedies and attacking crime on all fronts, were made with direct reference to [civil RICO], it is in this spirit that all of the Act's provisions should be read.

---

**3.** *See, e.g., Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286; *United States v. Altese,* 542 F.2d 104, 106 (2d Cir.1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977); *Callan v. State Chemical Mfg. Co.,* 584 F.Supp. 619 (E.D.Pa. 1984); *Bennett v. E.F. Hutton Co., Inc.,* 597 F.Supp. 1547 (N.D. Ohio 1984); *Chambers Development Co., Inc. v. Browning–Ferris Industries,* 590 F.Supp. 1528 (W.D.Pa.1984); *Slattery v. Costello,* 586 F.Supp. 162 (D.D.C.1983); *United States v. Vignola,* 464 F.Supp. 1091, 1095 (E.D.Pa.), *aff'd,* 605 F.2d 1199(3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). The applicability of the liberal construction standard has been questioned in *criminal* RICO cases in view of the general canon of interpretation that ambiguities in criminal statutes are to be construed in favor of leniency. *See, e.g., United States v. Davis,* 576 F.2d 1065 (3d Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978).

**4.** Where Congress has made its intention clear, as in the liberal construction directive of the RICO statute, we are required to give effect to

the intent of Congress; in seeking to realize that intent we must look first to the "literal meaning of the words employed." *Flora v. United States,* 357 U.S. 63, 65, 78 S.Ct. 1079, 1081, 2 L.Ed.2d 1165 (1958). The importance of giving full life to legislative intent is a cornerstone not only of American jurisprudence but also of the common law. Sir Edward Coke in *Heydon's Case* four centuries ago stated the rule which succinctly encapsulated this policy in his statement that:

the office of all the Judges is always to make such ... construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief ..., and to add force and life to the cure and the remedy, according to the true intent of the makers of the Act, *pro bono publico.*

76 Eng.Rep. 637, 638 (Ex.1584). Thus, given the liberal construction language of the statute, "narrow readings" of RICO must be rejected. *See Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286.

*Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286 (citations omitted). The Court has clarified that "RICO is to be read broadly." *Id.* at 497, 105 S.Ct. at 3285. The language of the statute as well as "Congress' self-consciously expansive language and overall approach" mandate such a reading. *Id.* at 498, 105 S.Ct. at 3286.

With that in mind, we must fashion an accrual rule which is responsive to Congress' stated language and the purpose of RICO.

### B. *Accrual Rule Applied by the District Court*

We turn now to the accrual rule applied by the district court and measure it against the purpose of Congress in establishing civil RICO.

The district court adopted the last injury discovery rule which holds that the limitations period runs from the date that the plaintiff knew or should have known of the last injury to the plaintiff caused by a predicate act. The court correctly reasoned that the simple discovery rule, which creates a separate accrual period for each injury,[5] is inappropriate where a plaintiff may be injured by a single predicate act which is not followed by the other predicate act or acts necessary to create a "pattern of racketeering activity" until some time later. The district court noted that in most federal causes of action, when a plaintiff suffers two injuries as a result of a defendant's conduct which is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period. In that case courts will grant relief to earlier related acts that would otherwise be time barred. *See Fowkes v. Pennsylvania Railroad Co.,* 264 F.2d 397, 299 (3d Cir. 1959) ("postponing of the running of the statute of limitations ... in ... situations involving continuing or repeated wrongs"). The "continuing violation" doctrine in employment discrimination cases provides a good example of this exception to the simple discovery rule. *See, e.g., Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982) (suit timely where pattern of discriminatory acts continues into the limitation period, even though discriminatory acts commenced prior to limitation period); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 105–06 (2d Cir.1978); *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978).

Civil RICO is an appropriate context in which to invoke this exception. By its terms, which require the commission of at least two predicate acts, RICO implies some degree of continuity. The district court reasoned that the last injury discovery rule is most appropriate in multiple injury cases "because a plaintiff cannot sue until the defendant has committed at least two predicate acts and the application of the discovery rule may shut off a remedy for a prior injury resulting from the same pattern of racketeering activity." *Keystone Ins. Co. v. Houghton,* 692 F.Supp. 466, 472 (E.D.Pa.1988).

The last injury discovery rule, however, does not go sufficiently far in addressing the continuing nature of the RICO offense because it applies only to the injury element and not to the "pattern" element of a RICO claim. By requiring proof of a *pattern* of racketeering, an enterprise, and an effect on interstate commerce, a civil RICO *claim* is differentiated from the two *predicate acts* which are prerequisites for the claim. The Supreme Court has noted that "proof of two acts of racketeering, without more, does not establish a pattern." *Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14 (quoting Sen. McClellan).

The essential problem with the accrual period running from the last injury lies in

---

**5.** The "simple," as opposed to the "last injury," discovery rule has apparently been adopted by courts of appeal of five circuits. *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir. 1988) (reversing position of district courts utilizing last predicate act and last injury discovery rules); *Compton v. Ide,* 732 F.2d 1429 (9th Cir. 1984); *Alexander v. Perkin Elmer Corp.,* 729 F.2d 576 (8th Cir.1984) (per curiam); *Bowling v. Founders Title Co.,* 773 F.2d 1175, 1178 (11th Cir.1985), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211 (4th Cir.1987) (following *Compton* without discussion).

the fact that RICO is a crime of association, which is violated, *inter alia,* by "any person ... associated with any enterprise ... the activities of which affect ... commerce, conduct[ing] ... [the] enterprise's affairs through a pattern of racketeering." 18 U.S.C. § 1962(c). Therefore the discovery rule must apply to the pattern element as well as the injury element. If the plaintiff does not discover until, for example, five years after the first injury to that plaintiff, that the injury or injuries were part of a pattern of racketeering, then that plaintiff could not bring a successful civil RICO action using the last injury discovery rule. Thus, the last injury discovery rule would not effectively fulfill the purpose of the statute where predicate acts which are part of the same "pattern" and which do not injure the plaintiff occur after the last injury to the plaintiff. We note that in situations where all injuries and predicate acts which form a "pattern" occur simultaneously, the last injury discovery rule has the same effect· as the simple discovery rule and achieves the same result as the rule we announce.

It would appear fundamental that the four-year statute of limitations for civil RICO may not begin to run until each of the elements of the cause of action exist. Thus, the discovery rule should be modified by applying the "knew or should have known" standard to *each* element of the cause of action, not merely to the injury element. The "pattern of racketeering activity" element "requires at least *two* acts of racketeering activity" committed within ten years of each other, one of which occurred since the enactment of the statute. 18 U.S.C. § 1961(5) (emphasis added). Thus, mere injury will not produce a claim under civil RICO without "at least two acts of racketeering." The Supreme Court in *Malley–Duff* indicated that a civil RICO cause of action is not to be identified with its underlying predicate acts in determining statute of limitations issues. 107 S.Ct. at 2763–64.

By requiring proof of a pattern of racketeering, an enterprise, and an effect on interstate commerce, a civil RICO claim is differentiated from the two predicate acts

necessary to establish a civil RICO violation. *Malley–Duff & Assocs. v. Crown Life Ins. Co.,* 792 F.2d 341, 348 (3d Cir. 1986), *aff'd on other grounds sub nom Agency Holding Corp. v. Malley–Duff,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Plaintiffs must not only be in a position where they know or should know of their injury, they must also be in a position where they know or should know that the predicate act causing injury is part of a pattern of racketeering.

Similarly, the "last injury" exception to the discovery rule should be extended to apply not merely to the injury element, but also to the predicate acts which constitute a "pattern." The statute should not be interpreted to preclude actions based on injuries occurring outside the limitations period if injuries that are derived from the same pattern of racketeering are within the limitations period. Likewise, predicate acts which are committed within the limitations period should provide a basis for civil RICO actions to redress a RICO injury occurring prior to the limitations period, provided that the predicate act causing injury and the predicate act relied upon are part of the same pattern.

### III.

### *The Accrual of a Civil RICO Action*

■ The rule which we announce provides that the limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same pattern. If the complaint was filed within four years of the last injury or the last predicate act, the plaintiff may recover for injuries caused by

other predicate acts which occurred outside an earlier limitations period but which are part of the same "pattern."

Conceptually there is no requisite RICO "injury" until the damage impacting the plaintiff becomes part of a pattern of racketeering activity. Prior to that point there is no *RICO* injury and the statute of limitations may not begin to accrue. "Because a potential plaintiff has not been injured under RICO until the pattern element has been satisfied, it is inappropriate to start the limitations period before the pattern is fully developed." Goldsmith, *Civil RICO Reform: The Basis for Compromise,* 71 Minn.L.Rev. 827, 879 (1987) (arguing that the simple discovery rule adopted by several courts of appeal should be rejected).

The application of the last predicate act accrual rule which we apply to the multiple injury, multiple victim, scenario in the case before us, would nevertheless permit the application of the simple discovery rule or the last injury discovery rule to RICO claims involving injury derived from a pattern of two or more predicate acts committed against a single victim in the same time frame. However, given "the federal interest in providing relief to those who are injured by a course of continuous and related conduct, it would be incongruous to bar, on statute of limitations grounds, recovery for predicate acts taking place outside the limitations period and permitting recovery only for those within the limitations period." *County of Cook v. Berger,* 648 F.Supp. 433, 435 (N.D.Ill.1986). In *County of Cook,* the district court determined that since "it is the continuing nature of the violation that is the very essence of a RICO claim," *id.* at 434, n. 1, the statute of limitations would run from the "last overt act" committed as part of the pattern. The district court rejected the defendant's contention that the statute of limitations should run from the time the County of Cook knew, or should have known, of its injury.

The district court in *United States v. Field,* 432 F.Supp. 55 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978),

examining a criminal RICO violation, explained:

The Act provides an example of a continuing offense for purposes of computing the time at which the statute of limitations begins to run. The "nature of the crime ... is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). The language of the Act, which makes a pattern of conduct the essence of the crime, "clearly contemplates a prolonged course of conduct." *Id.* at 120, 90 S.Ct. at 863. Like the statute of limitations for conspiracies, which runs from the date of the last overt act, *Grunewald v. United States,* 353 U.S. 391, 396–97, 77 S.Ct. 963 [969–70], 1 L.Ed.2d 931 (1957), the statute of limitations for violations of the Act runs from the date of the last alleged act of racketeering activity.

*Id.* at 59. A similar analysis applies in the parallel civil RICO context. It is the continuing nature of the violation which distinguishes a RICO claim from claims arising simply from a predicate act and which requires the rule we announce.

We are cognizant that, in determining the correct accrual rule for a federal statute, we must examine the purpose of the law. The Supreme Court has noted that the civil RICO treble-damages provisions were primarily remedial in purpose. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185 (1987). And, of course, the statute is to "be liberally construed to effectuate its *remedial* purposes." Pub.L. 91–452, § 904(a) 84 Stat. 947 (emphasis added); *see Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285.

An important secondary concern was the policing function. *McMahon,* 107 S.Ct. at 2344–45. As the Court in *Malley–Duff* points out, civil RICO was intended to encourage the activity of "private attorneys general." 107 S.Ct. at 2764. Allowing plaintiffs to rely, for accrual purposes, on predicate acts which are part of the pattern which is a necessary element of their cause

of action even though the specific act relied on has not caused direct injury, ensures that the remedial policy of the statute is not artificially restricted by a narrow accrual rule and likewise gives full life to the "private attorney general" policy of the statute.

Congress also intended that civil RICO address patterns of racketeering affecting multiple victims. As we noted in *Barticheck v. Fidelity Union Bank*, 832 F.2d 36, 38–39 (3d Cir.1987), the number of victims of a pattern of racketeering is an important factor in determining the existence of a RICO pattern. In that case the "most significant" factor in our determination that such a pattern existed was the fact that "the scheme involved the repetition of similar misrepresentations to more than twenty investors." *Id.* at 39. We recently determined that "a single victim, a single injury, and a single short-lived scheme with only two active perpetrators" is not enough to generate a RICO cause of action. *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63, 67 (3d Cir.1987). In multiple victim cases each victim may be unaware for many years that their injury is part of a pattern rather than an isolated incident. The rule we propound implements Congress' intention to address patterns affecting multiple victims while other accrual rules discussed here serve to undercut that intention when they are applied to multiple victim violations such as those perpetrated by the Houghton Group.

An interesting analogy to the rule which we announce is the accrual rule in RICO criminal conspiracy cases. In 18 U.S.C. § 1962(d) conspiracy cases, no overt act need be proven. *United States v. Carter*, 721 F.2d 1514, 1528 n. 20 (11th Cir.), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed. 2d 36 (1984); *United States v. Barton*, 647 F.2d 224, 237 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). Therefore, the statute of limitations in conspiracy cases where no overt act need be proven, such as a RICO conspiracy, does not run from commission of the last overt act; the conspiracy may be deemed to continue as long as its purposes have neither been abandoned nor fully accomplished. *United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed. 2d 822 (1984); *United States v. Grammatikos*, 633 F.2d 1013, 1023 (2d Cir.1980).

The Supreme Court has determined that a conspiracy *requiring* an overt act is deemed complete for statute of limitations purposes at the time of completion of the last overt act. *Fiswick v. United States*, 329 U.S. 211, 216, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946). The period of limitations in conspiracy cases requiring an overt act is tolled by each overt act done pursuant to the agreement. *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *United States v. Johnson*, 165 F.2d 42 (3d Cir.1947), *cert. denied*, 332 U.S. 852, 68 S.Ct. 355, 92 L.Ed. 421 (1948). This is a rule of statutory construction, not a factual determination as to whether a conspiracy existed at a particular time.

By analogy the last predicate act of a pattern of racketeering activity is an appropriate place for civil RICO causes of action to accrue. As the court in *County of Cook* stated, "[t]he principles of conspiracy law ought clearly to apply, and so long as any of the predicate acts occur within the limitations period, a defendant should have to answer for all of his related and continual acts of harm." 648 F.Supp. at 435.

■ Finally, we note that the accrual rule we fashion must take the specific language of the statute into account. Since the last of the predicate acts forming a civil RICO "pattern of racketeering activity" must occur within ten years after the commission of a prior predicate act, 18 U.S.C. § 1961(5), there is inherent in the statute a ten year limit on the point at which the last predicate act for purposes of accrual may occur.[6] Congress in enacting the ten year

---

6. We are mindful of the Supreme Court's observation:

> A federal cause of action "brought at any distance of time" would be "utterly repugnant

to the genius of our laws." *Adams v. Woods*, 2 Cranch 336, 341 [2 L.Ed. 297] (1805). Just determinations of fact cannot be made when, because of the passage of time, the memories

limit must have envisioned causes of action which would involve patterns of racketeering extending over that period of time. It would be inconsistent with this breadth of definition for us to state that we will look to the past ten years to see if a civil RICO claim exists but if we find ten years of racketeering activity, all related and all perpetrated by the same defendants, we will provide a remedy only to those who were victimized within the past four years. To do so would encroach upon and limit a legislatively-enacted scheme to provide recovery for racketeering injuries. *See* 18 U.S.C. § 1961(5), 1964(c).

## IV.

### A. *The Simple Discovery Rule*

In addition to the last predicate act rule we announce and the last injury discovery rule utilized by the district court, federal courts have utilized two other accrual rules in civil RICO cases. One approach, adopted by several courts of appeal is the simple discovery rule, which takes the general federal rule of accrual and applies it to civil RICO claims. This rule holds that a civil RICO claim arises whenever the plaintiff knows or should have known of its injury. *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988) (reversing position of district courts utilizing last predicate act and last injury discovery rules); *Compton v. Ide,* 732 F.2d 1429 (9th Cir.1984); *Alexander v. Perkin Elmer Corp.,* 729 F.2d 576 (8th Cir.1984) (per curiam); *Bowling v. Founders Title Co.,* 773 F.2d 1175, 1178 (11th Cir.1985), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211 (4th Cir.1987) (following *Compton* without discussion).

The simple discovery rule is an effective rule where the facts indicate that there was one victim and each element and all predicate acts of a RICO violation were present at the same time. It is only in the case where multiple victims, or multiple injuries or predicate acts extending over a period of time are present that the rule we announce is different in application from the simple discovery rule.

In a private civil RICO action the plaintiff must allege and prove that the plaintiff has been "injured in his business or property by reason of [a RICO] violation." 18 U.S. C. § 1964(c). The Supreme Court in *Sedima* emphasized that "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." 473 U.S. at 496, 105 S.Ct. at 3285.[7] The courts which utilize the simple discovery rule focus exclusively on the injury element for accrual purposes. *See, e.g., Compton,* 732 F.2d at 1433. The Supreme Court, however, has made it clear that "the heart of any RICO complaint is the allegation of a *pattern* of racketeering." *Malley–Duff,* 107 S.Ct. at 2766 (emphasis in original). In *Sedima* the Supreme Court clarified the fact that "the essence of the violation is the commission of those [predicate] acts in connection with the conduct of an enterprise." 473 U.S. 497, 105 S.Ct. at 3285. Given the Supreme Court's emphasis on the pattern element as the core of the violation, the simple discovery rule's focus on injury is misplaced.

"Because a potential plaintiff has not been injured under RICO until the pattern element has been satisfied, it is inappropriate to start the limitations period before the pattern is fully developed." Goldsmith, *Civil RICO Reform: The Basis for Com-*

of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten.
*Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985). *See also Kreiger v. United States,* 539 F.2d 317, 322 (3d Cir.1976) (statute of limitations important to prevent unfair surprise of stale claims). Nonetheless, the accrual period must relate in some organic fashion to the nature of the cause of

action. At a minimum it must allow the bringing of a cause of action where the statute clearly intends that one be brought.

7. In a civil RICO action the injury which confers standing need not flow from the pattern of racketeering itself but must flow from the commission of the predicate act. *See Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1268 (3d Cir.1987).

*promise,* 71 Minn.L.Rev. 827, 879 (1987) (arguing that the simple discovery rule adopted by several circuits should be rejected). The simple discovery rule mistakenly focuses upon injury—not *"RICO* injury." Under the simple discovery rule if a plaintiff suffers a single injury as a result of a predicate act but the second predicate act which establishes the necessary "pattern" occurs five years after the injury to the plaintiff, that plaintiff's claim is barred by the four year civil RICO statute of limitations. Yet the original damage to the plaintiff is not in fact a RICO injury until, at a minimum, the second predicate act establishes the necessary pattern. In such cases the purpose of the statute is defeated by the simple discovery rule.

The court in *County of Cook* points out that the simple discovery rule "confuses the injurious RICO violation, a pattern of illegal conduct, with its civil remedy. It is the nature of this prolonged, continuing offense which is the primary determinant of plaintiff's injury and which should govern the initiation of the statute of limitations." 648 F.Supp. at 434 n. 1.[8]

## B. *The Clayton Act Rule*

A second accrual rule is the Clayton Act accrual rule, *Gilbert Family Partnership v. Nido Corp.,* 679 F.Supp. 679, 686 (E.D. Mich.1988); *Armbrister v. Roland Intern Corp.,* 667 F.Supp. 802 (M.D.Fla.1987), which follows the antitrust accrual rule: "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). In the antitrust context, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him [and] the statute of limitations runs from the commission of the act." *Id.* Damages, however, are limited to those sustained in the four years prior to suit even if the damages were sustained as part of an ongoing RICO violation. *See id.* The accrual rule the *Armbrister* court applied to the civil RICO claim before it holds that a "cause of action immediately accrues under the Clayton Act once the 'plaintiff feels the adverse impact of [the] antitrust conspiracy.' " *Id.* at 824 (citations omitted). The *Gilbert Family* court notes, however, that the "knew or should have known" discovery rule standard has been applied to Clayton Act accrual cases to toll the statute of limitations. 679 F.Supp. at 686. The Clayton Act accrual rule is, thus, virtually identical to the simple discovery rule in its application. *See Rhoades,* at 1103–1104; *but see* J. Moss, *Special Problems of A Civil RICO Case,* 181, in *Fourth Annual RICO Litigation Seminar* (1987) (predicting that in light of *Malley–Duff,* the Supreme Court might well reject the simple discovery rule in favor of the last predicate act rule since "the accrual rule utilized in antitrust cases is the same 'continuing violation' rule"). The Clayton Act rule is, therefore, in cases such as the one before us, subject to the critique of the simple discovery rule we discussed previously.

The strongest support for the Clayton Act rule emanates from the Supreme Court's decision in *Malley–Duff* to adopt the Clayton Act four-year statute of limitations. The Supreme Court found "similarities in purpose and structure between RICO and the Clayton Act," 107 S.Ct. at 2765, and stressed that both "are designed to remedy economic injury by providing for the recovery of treble damages, costs and attorneys fees." *Id.* at 2764. Both statutes are also calculated to "bring to bear the pressure of 'private attorneys general' on a serious national problem" for which

---

8. One of the difficulties courts face in dealing with RICO statute of limitations issues is the fact that "[c]oncepts such as RICO 'enterprise' and pattern of racketeering activity were simply unknown to common law." *Malley–Duff,* 107 S.Ct. at 2764 (quoting *Malley–Duff and Associated v. Crown Life Ins. Co.,* 792 F.2d 341, 348 (3d Cir.1986), *aff'd sub nom Agency Holding Corp. v.*

*Malley–Duff,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987)). Courts are, thus, understandably tempted to apply common law doctrines, such as the simple discovery rule, which are quite appropriate in common law injury cases, to civil RICO where the same doctrines may be inappropriate.

public prosecutorial resources are deemed inadequate. *Id.*

The Clayton Act analogy in the civil RICO accrual context fails because of the fact that different elements are necessary to make out a cause of action under the two statutes. In particular, the Clayton Act has no "pattern" requirement. A conspiracy under the Clayton Act may occur as soon as one or more individuals combine in restraint of trade and an injury occurs, whereas in the case of a civil RICO cause of action, the pattern requirement is often not met until some later time. Furthermore, while the object of a conspiracy in restraint of trade is relatively easy to perceive, a plaintiff injured by a civil RICO predicate act often does not know whether parties engaging in the offensive acts are part of a simple conspiracy to defraud or are part of an enterprise engaged in a pattern of racketeering activity. We agree that, as the Supreme Court points out, there is great similarity in purpose and structure between the two acts, but we conclude that the different elements of the two claims mandate distinct rules concerning accrual. As the district court notes in the case before us, "the uniqueness of the RICO statute with all its prerequisites and the fact that multiple injuries could result from a single pattern of racketeering activity argues against the incorporation of the Clayton Act accrual rule." *Keystone*, 692 F.Supp. at 471.

## V.

We come now to the application of the civil RICO accrual rule we announce to the facts of the instant case. It is evident from the record that the pattern of racketeering activity upon which Keystone relied in bringing its claim was an ongoing one which continued at least until September 19, 1983. On that date, as part of the ongoing racketeering pattern, an act of mail fraud was committed for which the Houghtons were convicted. Applying the last predicate act accrual rule to the findings of fact made by the district court and unchallenged on appeal, we find that Keystone may rely upon the September 19, 1983, mailing as the last predicate act in the ongoing Houghton Group pattern of racketeering activity.[9] Since this date is within four years of the July, 1986 filing of this suit, Keystone's civil RICO claim is not barred by the civil RICO four year statute of limitations.

Therefore we will reverse the judgment of the district court in favor of appellees Joseph Houghton, et al. Since the district court's only basis for judgment against Keystone on the civil RICO claim was the court's determination that Keystone's civil RICO claim was barred by the statute of limitations, a determination we find to have been in error, we will remand to the district court for entry of judgment for Keystone on its civil RICO claim.[10]

---

**9.** Although not specifically found by the district court, the record is clear, and it is uncontested, that the Houghtons were convicted of mail fraud as a result of a September 15, 1983, mailing of an insurance claim by Donna Houghton to Security of America Life Insurance Company.

**10.** Because of the disposition we make of this case we have no need to examine appellant's contention, first raised at oral argument, that the Supreme Court's decision in *Malley-Duff* should not be applied retroactively to this case.