# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2789

_____

In re: Pre -Filled Propane Tank Antitrust Litigation

------------------------------

Hartig Drug Company; Jason Moore's Texaco, L.L.C., doing business as Moore's Texaco; Marlo Ortiz; Stephen Morrison; Steven Tseffos; Glenville Shell, LLC; Zarco USA, Inc.; AQ Investments, LLC; LJax Enterprises, Inc.; J & V Management, LLC; Butch's Central Coastal, Inc.; Zerka's Party Store, Inc.; OM Commercial Neenah Oil, Inc.; CCLAS, Inc.; Hopewell Exxon, LLC; Tuban Petroleum, LLC; 33 and a Third, LLC; Tuban 610, LLC; Highway 182, LLC; West Main Street, LLC; Roth's Country Corner, Inc.; 1919 Airline Hwy., LLC; East Airline, LLC; Gramercy Cheap Smokes, LLC; Conti's Service Center, Inc.; Route 49 Gas & Go, Inc.; Surinder Kaur, Inc.

*Plaintiff*s

Morgan-Larson, LLC

*Plaintiff - Appellant*

Ashville General Store, Inc.; Sean Venezia; Michael S. Harvey; Gregory Ludvigsen; Arthur Hull; Alan Rockwell; James Halgerson; Thomas R. Clark; Bryce Mander; Alex Chernavsky; Arrow Hardware, LLC; Birdie's, Inc.; Alex Chernavsky; Lochraven Sunoco, Inc.; American Auto Repair

*Plaintiff*s

Johnson Auto Electric, Inc.

*Plaintiff - Appellant*

Cedar Holly Investments, LLC; Tuckerton Lumber Company; Ace High Auto Repair & Propane; CEFO Enterprise Corp.; Jon Wall, Inc.; RC Gasoline

*Plaintiff*s

Speed Stop 32, Inc.

*Plaintiff - Appellant*

Zarco USA, Inc.; Dunmore Oil Co., Inc.; JoJo Oil Co., Inc.; Ekonomy Enterprises, Inc.

*Plaintiff*s

Yocum Oil Company, Inc.

*Plaintiff - Appellant*

v.

Ferrellgas Partners, L.P. a limited partnership; Ferrellgas, L.P. a limited partnership, doing business as Blue Rhino; AmeriGas Partners, LP a limited partnership; UGI Corporation; AmeriGas Propane, Inc., doing business as AmeriGas Cylinder Exchange; AmeriGas Propane, LP

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: March 16, 2016
Filed: August 25, 2016
_____

Before WOLLMAN, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Plaintiffs Morgan-Larson, LLC, Johnson Auto Electric, Inc., Speed Stop 32, Inc., and Yocum Oil Company, Inc. (collectively "Plaintiffs" or "Plaintiff-Appellants") appeal the district court's[1] dismissal of their claims for damages in their action against Defendants Ferrellgas[2] and AmeriGas[3] under Section 1 of the Sherman Act, see 15 U.S.C. § 1. For the reasons stated below, we affirm the judgment of the district court.

I.

In the United States, Ferrellgas and AmeriGas (together, "Defendants") are the largest distributors of pre-filled propane exchange tanks, which are portable steel cylinders containing propane that are used primarily to power outdoor grills and heaters. The tanks come in a standard size and are capable of being filled with up to 20 pounds of propane. Before 2008, the tanks were filled with 17 pounds of propane. From 2006 to 2008, the cost of propane rose and in 2008, Defendants reduced the fill level of the tanks from 17 to 15 pounds of propane per tank while maintaining the same price per tank.

In 2009, a group of plaintiffs ("2009 Plaintiffs") filed a class action lawsuit against Defendants alleging that Defendants had acted in concert to reduce the amount of propane contained within the tanks while maintaining the same price per

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]Ferrellgas Partners, L.P. and Ferrellgas, L.P. will be collectively referred to as "Ferrellgas." Ferrellgas does business under the name Blue Rhino.

[3]AmeriGas Partners, LP; AmeriGas Propane, Inc.; and AmeriGas Propane, LP will be collectively referred to as "AmeriGas."

tank, and thus artificially increasing the price of the tanks. Amended Complaint at ¶¶ 1-4, In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig., No. 09-2086, 2010 WL 2008837 (W.D. Mo. May 19, 2010) (hereinafter "In re Propane I"). The 2009 Plaintiffs claimed that the actions of Defendants violated Section 1 of the Sherman Act, as well as state antitrust and consumer protection laws. The named plaintiffs in In re Propane I were all indirect purchasers, individuals who purchased the pre-filled propane exchange tanks from companies to whom Defendants initially sold the tanks. However, in their amended complaint, the 2009 Plaintiffs defined their class as "[a]ll persons who purchased a Propane Tank sold, marketed, or distributed by any Defendant during the applicable limitations period."

On December 8, 2009, the 2009 Plaintiffs moved for preliminary approval of settlement agreements. The class action settlement agreements were finally approved by the district court on October 6, 2010. The AmeriGas settlement agreement defined the settlement class as "all people who purchased or exchanged one or more of AmeriGas's pre-filled propane gas cylinders in the United States not for resale, between June 15, 2009 and November 30, 2009." The Ferrellgas settlement agreement defined the settlement class as "all people who purchased or exchanged one or more of Ferrellgas's pre-filled propane gas cylinders in the United States not for resale, between June 15, 2009 and the date of Preliminary Approval." The date of preliminary approval was October 13, 2011.

On March 27, 2014, the Federal Trade Commission ("FTC") issued a complaint against Defendants alleging that they had restrained price competition because of their 2008 decision to decrease the fill level of the propane tanks. Shortly thereafter, in October 2014, Plaintiffs and other direct and indirect purchasers filed the present suit. Plaintiff-Appellants are all direct purchasers, that is purchasers who purchased tanks directly from Defendants for resale. In their complaint, Plaintiffs allege that the 2008 reduction in fill level was the product of improper collusion between Defendants, and despite the settlement agreements, Defendants continue to conspire

-4-

and maintain their illegally agreed upon fill levels in violation of Section 1 of the Sherman Act.

The district court determined that Plaintiffs' claims are barred by the statute of limitations. The court concluded that none of the tolling theories advanced by Plaintiffs were sufficient to adjust or toll the statute of limitations. Accordingly, the district court granted Defendants' Motion to Dismiss Plaintiffs' claims for damages.[4] Plaintiffs timely appealed. On appeal, Plaintiffs argue that the district court erred in failing to find that the continuing violations theory, which has the effect of restarting the limitations period, prevented the dismissal of Plaintiffs' claims. No other issues are raised on appeal.

## II.

"We review a district court's grant of a motion to dismiss de novo." Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 933-34 (8th Cir. 2012). We take the facts alleged in the complaint as true. Bradley Timberland Resources v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013). Whether a party's claim is barred by the statute of limitations is a question of law that we review de novo. McDonough v. Anoka Cnty., 799 F.3d 931, 939-40 (8th Cir. 2015).

Actions brought under Section 1 of the Sherman Act must be filed within four years of the accrual of the cause of action or they are barred by the Sherman Act's statute of limitations. 15 U.S.C. § 15b. "Generally, a cause of action [under the Sherman Act] accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971) (citations omitted). Where a plaintiff's interests are

---

[4]The district court did not dismiss indirect purchaser plaintiffs' claims for injunctive relief.

repeatedly invaded, a continuing violation occurs. Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 237 (9th Cir. 1987) (citation omitted). "However, even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act." Varner v. Peterson Farms, 371 F.3d 1011, 1019 (8th Cir. 2004) (internal quotation marks and citation omitted). "An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff." Id. (citing Pace Indus., 813 F.2d at 238). "Acts that are merely unabated inertial consequences of a single act do not restart the statute of limitations." Id. (internal quotation marks and citation omitted).

Plaintiffs have alleged two distinct types of overt acts that occurred within the limitations period: (1) Defendants' sales to Plaintiffs at artificially inflated prices; and (2) conspiratorial communications between Defendants regarding pricing and fill levels. Plaintiffs argue that either of these activities is sufficient for a continuing violation under the Sherman Act.

Plaintiffs contend that the Supreme Court held in Klehr that each sale the defendant makes to the plaintiff pursuant to a price-fixing conspiracy restarts the statutory limitations period. See Klehr v. A.O. Smith Corp., 521 U.S. 179, 189 (1997) ("Antitrust law provides that, in the case of a 'continuing violation,' say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, 'each overt act that is part of the violation and that injures the plaintiff,' e.g., each sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'" (citing Phillip Areeda & Herbert Hovenkamp, ANTITRUST LAW, ¶ 338b, at 145 (rev. ed. 1995))). Although Plaintiffs assert that this language in Klehr decides the issue in this case, upon a review of the issue presented and reasoning in Klehr, Plaintiffs' contention fails.

Klehr was a Racketeer Influenced and Corrupt Organizations Act ("RICO") case that rejected the Third Circuit's last predicate act rule, under which a RICO action accrued when the plaintiff knew or reasonably should have known of the last predicate act that was a part of the same pattern of racketeering activity. Id. at 186 (citing Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1130 (3d Cir. 1988)). The last predicate act did not have to result in injury but must have been part of the same pattern. Id. (citing Keystone, 863 F.2d at 1130). The Supreme Court compared the overt-act requirement under a price-fixing conspiracy in violation of antitrust laws to the last predicate act rule under RICO. Id. at 188-190. The primary purpose of the above-quoted language was to clarify that, unlike under the last predicate act rule applied by the Third Circuit to RICO claims, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." Id. at 189 (citations omitted). The Court concluded that the Third Circuit's last predicate act rule was not a proper interpretation of RICO because it created a limitations period longer than that envisioned by Congress, allowing plaintiffs "who know of the defendant's pattern of activity to simply wait, sleeping on their rights, as the pattern continues and treble damages accumulate." Id. at 187 (internal citation and quotation marks omitted). A rule that dramatically lengthened the limitations period "thereby conflict[ed] with a basic objective—repose—that underlies limitations periods." Id. The last predicate act rule permitted plaintiffs to recover for injuries that occurred outside the limitations period, but the Court determined that "as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Id. at 190. Thus, the language regarding overt acts in a price-fixing conspiracy merely illustrated where the Third Circuit's last predicate rule had gone too far. Id. at 189. The Court did not pronounce a new principle with respect to what constitutes a continuing violation under the Sherman Act.

Plaintiffs further argue that in <u>Wholesale Grocery</u>, we relied on the <u>Klehr</u> language in determining that the plaintiffs' claims were not untimely under 15 U.S.C. § 15b. <u>In re Wholesale Grocery Prods. Antitrust Litig.</u>, 752 F.3d 728, 736 (8th Cir. 2014), <u>cert. denied</u>, 135 S.Ct. 2805 (2015). However, the facts of <u>Wholesale Grocery</u> are easily distinguishable from the facts in the instant case. In <u>Wholesale Grocery</u>, two grocery wholesalers entered into an asset exchange agreement that included a non-compete provision for former customers in certain geographic regions. <u>Id.</u> at 735. Ultimately, wholesale prices increased as a result of the non-compete provision. <u>Id.</u> We explained that under the plaintiff's theory of the case, "the anticompetitive nature of the wholesalers' agreement was not revealed until several years after the asset exchange" and that although the non-compete agreement allowed the wholesalers to compete for new customers, "it was not apparent until later that the wholesalers' real agreement was . . . a blatant market division." <u>Id.</u> at 736. Further, we reasoned, "Under <u>Klehr</u>, a monopolist commits an overt act each time he uses unlawfully acquired market power to charge an elevated price." <u>Id.</u> (citing <u>Klehr</u>, 521 U.S. at 189). Thus, in <u>Wholesale Grocery</u>, the wholesalers committed new and independent overt acts that were more than the mere inertial consequences of the initial non-compete agreement by raising prices. <u>See id.</u> (acknowledging that if the price increase was not considered a new overt act, then "two parties could agree to divide the markets for the purpose of raising prices, wait four years to raise prices, then reap the profits of their illegal agreement with impunity because any antitrust claims would be time barred"). Hence, the price increase by the wholesalers restarted the statute of limitations.

<u>Wholesale Grocery</u> is consistent with other decisions in which we held that in order to restart the statute of limitations, more than the mere performance or reaffirmation of an unlawful agreement is required to satisfy the overt act requirement of a continuing antitrust violation. <u>See Varner</u>, 371 F.3d at 1020 (citations omitted) ("Performance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period."); <u>Midwestern Mach. Co. v. Northwest Airlines,</u>

Inc., 392 F.3d 265, 269 (8th Cir. 2004) ("The typical antitrust continuing violation occurs in a price-fixing conspiracy, actionable under § 1 of the Sherman Act . . . , when conspirators continue to meet to fine-tune their cartel agreement. These meetings are overt acts that begin a new statute of limitations because they serve to further the objectives of the conspiracy." (internal citations omitted)); Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1052 (8th Cir. 2000) (noting that "acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations" (citation omitted)); see also Z Techs. Corp. v. Lubrizol Corp., 753 F.3d 594, 600 (6th Cir. 2014) ("[O]ur decisions have repeatedly emphasized that profits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as 'independent acts.' Rather, they are uniformly viewed as 'ripples' caused by the initial injury, not as distinct injuries themselves.") (citation omitted); Aurora Enters., Inc. v. NBC, 688 F.2d 689, 694 (9th Cir. 1982) ("[T]he mere fact that defendants receive a benefit today as a result of a contract executed in 1966 . . . is not enough to restart the statute of limitations."). Accordingly, Plaintiffs' claims must be premised on "some injurious act actually occurring during the limitations period, *not merely the abatable but unabated inertial consequences of some pre-limitations action*." Al George, Inc. v. Envirotech Corp., 939 F.2d 1271, 1274 (5th Cir. 1991) (quoting Imperial Point Colonnades Condo., Inc. v. Mangurian, 549 F.2d 1029, 1035 (5th Cir. 1977)) (emphasis in Al George)).

Here, Plaintiffs allege that reduction in fill levels, and thus the effective price increase, occurred in 2008, almost immediately after Defendants reached the unlawful agreement. Plaintiffs have not alleged any overt acts within the limitations period that were new and independent acts, uncontrolled by the initial agreement. The sales of 15 pound tanks to Plaintiffs were the mere, unabated consequences of the original agreement between Defendants to lower the fill level of the propane tanks while maintaining the same price. Plaintiffs do not allege that Defendants met to fine-tune their agreement, further increased the price of the propane tanks, further reduced the fill levels without reducing the price, or took any other novel overt act in furtherance

-9-

of the conspiracy within the limitations period. Continued sales pursuant to an earlier unlawful agreement, under which prices were immediately raised, reflect mere reaffirmations of the agreement and are insufficient to restart the limitations period. See Varner, 371 F.3d at 1020 (holding that performance of an anticompetitive agreement is not sufficient to restart statute of limitations).

As for the purported communications between Defendants, these too reflect mere reaffirmations. Plaintiffs allege that through the end of 2010, Defendants regularly communicated to assure compliance with the conspiracy and monitored the market to check that neither cheated on their anticompetitive agreement. Nevertheless, Plaintiffs do not contend that Defendants changed their initial agreement or "fine-tuned" their agreement. See Midwestern, 392 F.3d at 269. The purported communications merely reaffirm and monitor the existing conspiracy but do not constitute overt acts sufficient to restart the statute of limitations.

Notably, the only specific conspiratorial acts alleged in Plaintiffs' complaint occurred in 2008, outside the limitations period in this action. Although Plaintiffs assert that Defendants' conspiracy is a continuing conspiracy, Plaintiffs only claim that Defendants continue to maintain the same fill levels and never specifically allege in their complaint that Defendants continue to conspire about prices. "Without more, parallel conduct does not suggest conspiracy." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007). "Even conscious parallelism, a common reaction of firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions is not in itself unlawful." Id. at 553-54 (internal quotation marks and citation omitted) (alterations in Twombly). Plaintiffs have not alleged facts after 2008 to "render a [continuing] § 1 conspiracy plausible." Id. at 556. Although Plaintiffs have sufficiently pled that Defendants reached an unlawful agreement in 2008, this occurred outside the limitations period. Without a sufficient overt act to restart the running of the statute

of limitations period, Plaintiffs' claims that Defendants are engaging in a continuing antitrust violation must fail.

Finally, antitrust law reflects a "congressional objective of encouraging civil litigation not merely to compensate victims but also to turn them into private attorneys general, supplementing Government efforts by undertaking litigation in the public good." Rotella v. Wood, 528 U.S. 549, 550 (2000). Because "private suits under the antitrust laws are allowed to correct public wrongs, it is appropriate to encourage suits as soon as possible to stop (or at least compensate) harm to the public." Midwestern, 392 F.3d at 272. The limitations period plays a role in limiting the public harm. Z Techs. Corp., 753 F.3d at 603 ("By encouraging parties to bring suits earlier, the statute of limitations attempts to minimize the public harm that might arise from harmful monopolies."). Because of In re Propane I, the first class action, there was public knowledge of Ferrellgas and AmeriGas's alleged conspiracy to lower fill levels without reducing prices. Plaintiffs raise no new conspiratorial allegations – all of Plaintiffs' factual allegations of a conspiratorial agreement by Defendants occurred in 2008, before In re Propane I was filed. Plaintiffs have not pled overt acts sufficient to show a continuing conspiracy. Thus, Plaintiffs' claim of a conspiracy in violation of § 1 of the Sherman Act is barred by the statute of limitations, and our conclusion reflects the objectives of Congress in encouraging timely lawsuits for the public good.

III.

For the foregoing reasons, we affirm the judgment of the district court.

BENTON, Circuit Judge, dissenting.

In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997), the Supreme Court describes a "continuing violation" that restarts the statute of limitations under antitrust law:

> Antitrust law provides that, in the case of a 'continuing violation,' say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.

***Klehr v. A.O. Smith Corp.***, 521 U.S. 179, 189 (1997) (internal quotations omitted). The majority tries to limit *Klehr* to its facts—that it was a RICO case. However, federal courts "are not free to limit Supreme Court opinions to the facts of each case." ***McDonough v. Anoka Cnty.***, 799 F.3d 931, 942 (8th Cir. 2015) (internal quotations omitted). The majority dismisses *Klehr*'s language as "illustrative and not essential to the holding," but "federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is of recent vintage and not enfeebled by any later statement." ***Id.*** (internal quotations omitted).

The rule is clear: "each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." ***Klehr***, 521 U.S. at 189. *See also* ***Oliver v. SD-3C LLC***, 751 F.3d 1081, 1086 (9th Cir. 2014) ("[T]he Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act."); ***In re Cotton Yarn Antitrust Litig.***, 505 F.3d 275, 290-91 (4th Cir. 2007) (noting that the complaint would be timely "so long as plaintiffs made a purchase from the Defendants within [the limitations period]"); ***Morton's Market, Inc. v. Gustafson's Dairy, Inc.***, 198 F.3d 823, 828 (11th Cir. 1999) ("[E]ven if there were no price-fixing conversations after 1987 . . . if plaintiffs purchased milk at a fixed price after that date, the purchase would constitute an overt act that injured it.

A cause of action would accrue with each purchase and a new statutory period would begin to run.").

Skirting *Klehr*, the majority relies on *Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004). The defendants there induced plaintiffs to take out a loan based on false information. *Varner*, 371 F.3d at 1011. More than four years later, they sued for antitrust "tying" violations. This court rejected plaintiffs' "continuing violations" argument because "[p]erformance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period." *Id.* at 1020.

The present case is distinguishable. *Varner* is about a tying arrangement, not "a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years." *See* *Klehr*, 521 U.S. at 189. A horizontal price-fixing conspiracy is a *per se* antitrust violation. *See* ***Leegin Creative Leather Products, Inc. v. PSKS, Inc.***, 551 U.S. 877, 886 (2007). A *per se* violation is a restraint that has "manifestly anticompetitive effects and lack[s] any redeeming virtue." *Id.* (internal citations omitted). The horizontal price-fixing agreement gave the defendants "unlawful market power" to inflict new and accumulating injury each time defendants sell a propane tank. *See* ***Wholesale Grocery***, 752 F.3d at 736. Under *Klehr*, "each sale to the plaintiff, start[ed] the statutory period running again." *See* ***Klehr***, 521 U.S. at 189.

The majority's reliance on *Midwestern Machinery* is similarly unpersuasive. There, this court distinguished between merger and conspiracy cases. "Unlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an ongoing scheme. A continuing violation theory based on overt acts that further the objectives of an antitrust conspiracy . . . or that are designed to promote a monopoly . . . cannot apply to mergers. . . ." ***Midwestern Machinery Co. v. Northwest Airlines, Inc.***, 392 F.3d 265, 271 (8th Cir. 2004). Thus, "to apply the continuing violation theory to *non-conspiratorial conduct*, new overt acts must be more than the unabated

inertial consequences of the initial violation." *Id.* at 270 (emphasis added). *See also Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (distinguishing between conspiratorial and non-conspiratorial cases in applying the continuing violations theory). Here, the plaintiffs allege conspiratorial conduct—illegally fixing prices—and the maintenance required to "further the objectives of an antitrust conspiracy. . . ." *See Midwestern Machinery*, 392 F.3d at 271. "Under *Klehr*, [defendants here] committ[ed] an overt act each time [they] use[d] unlawfully acquired market power to charge an elevated price." *See In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 736 (8th Cir. 2014).

The majority's concern about plaintiffs sleeping on their rights is irrelevant because the statutory period runs again "regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *See Klehr*, 521 U.S. at 189. *See also Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n.15 (1968) (noting, in the case of a continuing violation under the Sherman Act, "Although [plaintiff] could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955"). At any rate, the *Klehr* rule does not discourage timely-filed suits because a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* at 190. Moreover, this rule prevents companies from "agree[ing] to divide markets for the purpose of raising prices, wait[ing] four years to raise prices, then reap[ing] the profits of their illegal agreement with impunity because any antitrust claims would be time barred." *Wholesale Grocery*, 752 F.3d at 736.

Because I believe *Klehr* controls this case, I dissent.

_____

-14-