Marlene ANDERSON and Thomas
Anderson, et al., Plaintiffs,

v.

CONSOL–PENNSYLVANIA COAL COM-
PANY, Consolidation Coal Company,
Consol–Land Development, Rheinische
Braunkohlenwerke, A.G., Maria There-
sa Bergbaugesellschaft MHB, Rhein-
braun U.S. Corporation, Monongahela
Railway Company, Karl Nixon, David
Boggs, Ewing Pollock, Pollock Pollock
& Thomas, The Upshur Agency, Defen-
dants.

Civ. A. Nos. 87–1962 to 87–1966,
87–1968, 87–1970 and 87–1971.

United States District Court,
W.D. Pennsylvania.

June 18, 1990.

OPINION

D. BROOKS SMITH, District Judge.

These eight consolidated cases arise from the acquisition of a right of way in Greene and Washington counties, Pennsylvania, on which defendants built a railroad line in or about 1982–83. These cases are related to another set of eight consolidated cases, *Loughman, et al., Consol-Pennsylvania Coal Co., et al.,* 740 F.Supp. 1114 (W.D.Pa. 1990) (the "Loughman cases") which recently were retried to verdict before this Court. In all sixteen cases, plaintiffs allege that defendants conspired to acquire plaintiffs' real estate at lower than its "true value" by misrepresenting their condemnation powers and by concealing the involvement of the defendant coal companies in the right-of-way acquisition and construction of the rail line.[1]

Defendants are several coal companies,[2] The Monongahela Railway Company, The Upshur Agency, which is a land company, various landsmen employed by Upshur, Ewing Pollock, an attorney, and Pollock Pollock and Thomas, his Washington, Pennsylvania law firm. The coal company defendants had entered into a joint venture to develop the Bailey Mine, part of which project involved the construction of a railroad to transport coal from the mine to market. There is no dispute that the coal company defendants entered into an agreement with Monongahela that they would finance the construction of the railroad spur, including the cost of acquiring the right of way. The defendant landsmen were hired by some of the defendants to acquire a right-of-way for a railroad spur to be built from Waynesburg, Pennsylvania to the Bailey Mine. The Loughman and Anderson plaintiffs allege that a conspiracy was formed to have the landsmen make misrepresentations to plaintiffs concerning the land acquisitions.

---

1. The Honorable Hubert I. Teitelbaum held in the *Loughman* cases, by Order of August 6, 1986, that defendant Monongahela Railroad had the power to condemn properties for purposes of building the railway spur to the Bailey Mine, regardless of the coal companies' involvement in the project.

2. Consol–Pennsylvania Coal Company, Consolidation Coal Company, Consol–Land Development, Rheinische Braunkohlenwerke, A.G., Maria Theresa Bergbaugesellschaft, Rheinbraun U.S.

The Loughman cases were filed in April and July, 1983. They meandered through the litigation process until they were tried to verdict, first before the Honorable Hubert Teitelbaum in early 1987, and on retrial by this Court in March, 1990. A multimillion dollar verdict was returned by the jury in the first trial; approximately six months later, the eight complaints in the above-captioned lawsuits (the "Anderson cases") were filed.

In these cases, the Anderson plaintiffs allege that defendants' conduct violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), 42 U.S.C. § 1983 ("Section 1983") and Pennsylvania common law.[3] Presently before us are three dispositive motions: Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment,[4] and Plaintiffs' Motion for Partial Summary Judgment.

The Supreme Court has explained the standard for evaluating summary judgment motions in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323–24, 106 S.Ct. 2548, 2552, 2552–53, 91 L.Ed.2d 265 (1986):

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
>
> \*     \*     \*     \*     \*     \*
>
> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose. (footnote omitted).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court further explained the plaintiff's burden in the summary judgment context:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512.

### A. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on plaintiffs' RICO and civil rights claims on grounds that they are barred by the relevant statutes of limitations. Alternatively, defendants attack these claims on sufficiency grounds. Finally, defendants urge us to dismiss plaintiffs' pendant state law claims on abstention grounds. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (where all federal claims are dismissed before trial, state claims should be dismissed as well).

#### 1. The RICO claims

The Anderson complaints were filed in September 1987, and concern events surrounding land transactions occurring from late 1981 through June, 1982. The elements of a RICO claim are: 1) the conducting of 2) an enterprise, 3) through a pattern, 4) of racketeering activity. A private plaintiff also must show that he has been injured in his business or property by the violative conduct to establish standing. *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1128 (3d Cir.1988). Here, plaintiffs have alleged that defendants "... used a telephone and/or U.S. Mail ... as part of a pattern of racketeering activity engaged in

---

**3.** The *Loughman* plaintiffs alleged violations of RICO and common law. This court granted judgment notwithstanding the verdict on the RICO claims by Order of March 1, 1990, on grounds that plaintiffs had failed to prove a pattern of racketeering under the guidelines set forth by the United States Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**4.** Citing the applicable statute of limitations, defendants contend they are entitled to judgment as a matter of law because plaintiffs' federal claims are untimely. Plaintiffs' motion for summary judgment is in essence an answer to defendants' timeliness argument. Because they raise the same issue, we will address defendants' and plaintiffs' summary judgment motions together.

fraudulently forcing individuals to sell their property for below its true market value." Anderson Complaint, ¶ 67; Gensler Complaint, ¶ 67; Deiteich Complaint, ¶ 67; Reese Complaint, ¶ 65; Grable Complaint, ¶ 67; Stoner Complaint, ¶ 67; Eisiminger Complaint, ¶ 68; Huffman Complaint, ¶ 66.[5]

### a. *Statute of Limitations*

RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), *aff'g in part, rev'ing in part, Malley–Duff & Assoc., Inc. v. Crown Life Insurance Co.*, 792 F.2d 341 (3d Cir.1986). Defendants urge us to examine the four years immediately preceding the filing date of plaintiffs' complaints, *i.e.*, September 17, 1983 through September 17, 1987, and to determine that all alleged predicate acts and injuries occurred prior to the commencement of this period.

Plaintiffs advance three arguments for not applying the four-year statute of limitations. First, they contend that the statute of limitations was tolled by the filing of a class action in the Loughman cases. Second, they argue that applying the four-year statute constitutes a retroactive application of precedent which would be improper under the circumstances. Third, they allege that equitable tolling is appropriate due to defendants' alleged fraudulent concealment of the facts.

### i. Application of Malley–Duff

Taking plaintiffs' second argument first, plaintiffs argue that under the analysis set forth in *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we should not apply the four-year statute of limitations adopted in 1987 by the Supreme Court in *Malley–Duff* to these cases, but rather that we should apply the six year limitations period used before *Malley–Duff*.[6] Plaintiffs conveniently ignore the fact that *Malley–Duff* predates the filing of the Anderson cases; thus, it was the law at the time plaintiffs filed their claims. Accepting *arguendo* that *Malley–Duff* should be applied prospectively only, plaintiffs' claims are still subject to a four-year limitations period.

### ii. The Timing of Defendants' Predicate Acts

Plaintiffs next contend that the statute of limitations is irrelevant because defendants are still committing predicate acts. The conduct cited by plaintiffs in support of this argument does not constitute conduct prohibited by RICO, however. For instance, plaintiffs cite the failure of the railroad to pay property taxes on the right-of-way and the coal companies' challenge to Greene County's attempt to assess such property taxes against them. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 32–33.

■ We cannot agree with plaintiff's characterization of defendants' involvement in the property tax dispute as a predicate act under either the law or under plaintiffs' theory of the case. In the pleadings, plaintiffs alleged that defendants'

---

**5.** Although these paragraphs of the Complaints generally allege that predicate acts of wire and mail fraud occurred and further direct the Court back to previous paragraphs of the same pleading for specific examples of such acts, there are no specific allegations of such acts in the Complaints. Because defendants have not challenged the viability of the Complaints on these grounds, however, we will proceed by assuming for purposes of the motions before us that plaintiffs can make an evidentiary showing of predicate acts sufficient to overcome a motion for failure to state a claim.

**6.** The three qualifications for applying a precedent prospectively only are:
1) The holding must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
2) The merits and demerits in each case must be weighed by looking to the history of the rule in dispute, its purpose and effect, and whether retrospective operation will further or retard the rule's operation;
3) Retrospective application must create the risk of producing substantially inequitable results.
*Hill v. Equitable Trust Co.*, 851 F.2d 691, 696 (3d Cir.1988), (citing *Chevron Oil Co. v. Huson*, 404 U.S. at 106–07, 92 S.Ct. at 355–56 *cert. denied, Data Controls North, Inc. v. Equitable Bank Nat. Ass'n*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).

racketeering activity consisted of "fraudulently forcing individuals to sell their property for below its true market value" by means of the United States mail and the telephone, thereby invoking the mail and wire fraud provisions of the definition of racketeering activity as set forth in 18 U.S.C. § 1961. *E.g.,* Anderson Complaint, ¶ 67. Defendants' tax dispute following the property sale is not conduct addressed in the complaint as part of a racketeering scheme, and we will not allow plaintiffs to expand their theory of the case at this late date in an effort to avoid summary judgment. The alleged tax dispute has no connection to plaintiffs' property sale, nor does it create a cognizable injury for plaintiffs.

Plaintiffs have made no showing nor have they articulated a theory which supports a finding that any predicate acts or injuries arising therefrom have occurred since the last land transaction in June, 1982.[7] Plaintiffs have identified no subsequent acquisition of property by defendants or representations via mail or wire by defendant landsmen concerning the railroad's power and intention to condemn plaintiffs' property in the complaint.

Accordingly, we find that the evidence indicates that the last injury occurred in or about mid–1982 when the railroad acquired the last piece of property in the right of way to the Bailey mine.

### iii. The Timeliness of the RICO Claims

■ Having determined that the four year statute applies and that there has been no showing of predicate acts or injuries occurring after June 15, 1982, we turn to the question of timeliness under current law in this Circuit. Our court of appeals has held that in a RICO action involving multiple victims, plaintiffs' claims are timely if they are filed within four years of discovery of the elements of the claim, or within four years of discovery of the last injury.

The Court of Appeals for the Third Circuit announced the accrual rule for RICO claims in *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1126 (3d Cir.1988):

> The rule which we announce provides that the limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern. In that case, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same 'pattern.'

A potential claimant's knowledge of the factual elements, not the legal significance of those elements, is all that is necessary for accrual to occur. 863 F.2d at 1127–28.

Defendants correctly contend that under the *Keystone* rule, this court must look at whether plaintiffs knew or should have known of their claims before September 17, 1983. Defendant's Brief In Support of Summary Judgment at 14. Based on the uncontroverted evidence presented to us, we find that plaintiffs Reese, Stoner and Gensler had actual notice of their claims before that date. According to their own deposition testimony, plaintiffs Reese and Stoner at the very least before or about April, 1983 (when the Loughman cases were first filed) knew not only the elements of their claims but also that other neighboring landowners were contemplating or in fact bringing suit. Transcript of Deposition Testimony of R.J. Reese at 81; Transcript of Deposition Testimony of C. Stoner at 48–49 (found at Exhibit III, items 1, 3 of the Affidavit of Peter S. Wellington, Esquire ("Wellington Affidavit"), Docket # 53).

Likewise, Plaintiff Gensler admits in his affidavit that he saw a newspaper article

---

7. Plaintiffs have set forth the closing dates for each of plaintiffs' properties which indicate that the acquisition period for these plaintiffs spanned from October 20, 1981 to June 15, 1982. Plaintiffs' Brief at 28 n. 10.

dated October 2, 1982, which referred to defendant Consolidation Coal Company's construction of a railroad spur for its Manor Mine Complex. Affidavit of Frances I. Gensler (Docket # 73), ¶ 4 (referring to Exhibit II, document no. 6, of the Wellington Affidavit). Therefore, we will grant summary judgment in favor of defendants on the RICO claims in Civil Action Nos. 87–1963, 87–1965, and 87–1968.

With regard to the remaining plaintiffs, under the *Keystone* rule we are left to determine when they knew or should have known of the claims against them. This inquiry poses a significant problem. Although plaintiffs deny having received adequate notice at the time they sold their property due to alleged fraud, they have failed to produce any evidence to that effect.[8] Instead, plaintiffs have argued in their opposition to summary judgment that the theory of fraudulent concealment works to extend the limitations period in these cases.

Admissions by plaintiffs Reese, Stoner, and Gensler of actual notice undercut any equitable theories of tolling advanced by their counsel in briefs. *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C.Cir.1984) ("The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."), *cert. denied, Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). As for the remaining plaintiffs, they must make some showing of affirmative misconduct by defendants at this stage of the proceeding to extend the limitations period. See *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C.Cir. 1989) (defendants next meet stringent standard when plaintiffs have shown affirmative misconduct by defendant; *Moore v. Farley*, RICO Bus.Disp.Guide 7236, 1989 WL 90176 (W.D.Pa.1989) (Bloch, J.). Given

the nature of the tolling argument, it is incumbent on each plaintiff to come forth with some evidence sufficient to create a genuine issue of fact in their case on the fraudulent concealment issue. It is well established that a plaintiff may not rely merely on the allegations of his pleadings for this purpose. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

■ We find that plaintiffs have not made an affirmative showing of fraudulent concealment concerning the claims of Anderson, Dietrich, Grable, Huffman, or Eisiminger. Plaintiffs have filed six affidavits in support of their fraudulent concealment argument; however, three of these affidavits, *i.e.*, Elizabeth T. Stevenson (Docket # 70), Louis Tarasi (Docket # 71), and Joseph Hinchliffe (Docket # 72), are insufficient as a matter of law and cannot be considered by this court.[9]

Stevenson's affidavit fails to establish the basis on which she would have personal knowledge of and be competent to testify to the matters contained therein. *Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir.1985). In fact, to the contrary, her only knowledge apparently is derived from a document produced by a third party during discovery and, for purposes of this motion, must be disregarded as hearsay. *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D.Pa.1980) (affidavit must be based on personal knowledge and be devoid of hearsay), *aff'd w/o op.*, 659 F.2d 1065 (3d Cir.1981).

Tarasi's affidavit represents that certain exhibits are true and correct copies of documents produced by a third party. However, no documents are attached to the affidavit for the court's review, nor are the documents specifically identified by the affidavit. Yet even had Tarasi's affidavit been filed in its completed state, we fail to see how third party documents would be

---

8. The following dates are identified in plaintiffs' respective complaints as the date each of them discovered defendants' alleged misrepresentations: Anderson, October, 25, 1985 (Complaint, ¶ 49); Gensler, January 15, 1987 (Complaint, ¶ 39); Deiteich, August, 1986 (Complaint, ¶ 39); Reese, June, 1987 (Complaint, ¶ 37); Grable, March, 1987 (Complaint, ¶ 39); Stoner, March,

1987 (Complaint, ¶ 39); Eisiminger, April, 1987 (Complaint, ¶ 36); Huffman, February, 1987 (Complaint, ¶ 38).

9. Messrs. Tarasi and Hinchliffe are counsel of record for plaintiffs; Ms. Stevenson is an employee of the Tarasi law firm.

anything other than hearsay when offered in this fashion.

Finally, Hinchliffe's affidavit explains the process undertaken to obtain admissible affidavits from plaintiffs. Hinchliffe represents that as of March 30, 1989, he had been unable to collect all of plaintiffs' affidavits, but further represents what such affidavits would have attested to had they been available. Not only do we find that Hinchliffe's prediction of his clients' testimony is insufficient for purposes of avoiding summary judgment, we also note that more than a year later only two of plaintiffs' affidavits have been filed.

The remaining three affidavits, *i.e.*, Eisiminger (Docket # 73), Gensler (Docket # 74), and David C. Hook, Esquire (Docket # 75), are not helpful. Eisiminger's asserts merely that he believed "what" defendant Wilson told her; unfortunately, Eisminger does not define for the Court the content of her conversations with Wilson, and the affidavit is unhelpful for that reason. Gensler's affidavit establishes that he had actual notice of his claims as early as 1982, as explained above. Hook's affidavit refers to his dealings with defendants on behalf of a nonparty, Sarah Closser, and also attests to the status of property tax assessments for the properties acquired by Monongahela for the Manor railroad tract project. We fail to see how these matters raise any issue of fact concerning the claims of the Anderson plaintiffs, or their alleged failure to discover said claims until over five years after the last land acquisition.

Plaintiffs have not presented us with any admissible evidence which raises a genuine issue of fact on the crucial issue of notice. Clearly, plaintiffs would bear the burden at trial of proving that their claims are timely and, absent even a minimal showing of evidence to that effect at this juncture, we must find that their RICO claims are untimely. In doing so, we are mindful of the admonition that "[l]imitations issues ... ordinarily require factual determinations and are best left to trial for resolution." *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975). In these cases, however, plaintiffs' total failure to produce any

admissible evidence in support of their tolling theory, and their inability to support a theory of subsequent predicate acts or injuries therefrom leads us to the inevitable conclusion that these are cases best disposed of by the summary judgment mechanism provided in Rule 56.

We emphasize that our decision on the timeliness of the RICO claims is based on plaintiffs' failure to produce evidence, and not on defendants' theory of constructive notice. Defendants contend that certain plaintiffs were on notice of their injuries by virtue of the widespread media coverage of events leading up to and involving the Bailey Mine project. In support, defendants cite two volumes of approximately 75 newspaper articles appended to the Wellington Affidavit, as well as various plaintiffs' deposition testimony to the effect that they subscribe to the local newspapers.

Had plaintiffs made the necessary evidentiary showing of defendants' fraudulent concealment, defendants' argument would not have been adequate rebuttal:

> [W]hen plaintiff shows that defendants committed affirmative acts of concealment with respect to a potential claim, defendants must meet a more stringent standard to bar a plaintiff on the ground that he was on notice of his claim notwithstanding the defendants' attempt to conceal it. [citation omitted] Specifically, a defendant who has engaged in fraudulent concealment, in order to make out a defense based on the plaintiff's lack of due diligence, must show something closer to actual notice than the merest inquiry notice that would be sufficient to set the statute of limitations running in a situation untainted by fraudulent concealment.

*Riddell v. Riddell Washington Corp.*, 866 F.2d at 1491. See also, *Hobson v. Wilson*, 737 F.2d at 35 ("We do not mean the kind of notice—based on hints, suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit").

### iv. Tolling

Finally, we will address briefly plaintiffs' other tolling theories. Regarding alleged

tolling by the existence of a class action in *Loughman*, a review of the record confirms that the original complaint in the Loughman cases, filed on behalf of Ms. Loughman only on April 19, 1983, contained class action allegations. Thereafter, in July, 1983, Loughman's counsel (who also is counsel for plaintiffs in this matter) filed complaints on behalf of the remaining seven Loughman plaintiffs, which complaints lacked any class allegations. At about the same time, an amended complaint repeating the class action allegations were filed on behalf of Ms. Loughman.

The eight Loughman cases were consolidated in August, 1983 and, more than a year and a half later, in April, 1985, plaintiffs' counsel filed a Third Amended Complaint on behalf of each plaintiff. None of the April, 1985 amended complaints contained class action allegations. This Court denied plaintiffs' Motion for Class Certification in December, 1988, citing plaintiffs' failure to comply with Local Rule 34.[10]

Plaintiffs cite *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) and *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), in support of their theory that commencement of a class action in *Loughman* tolled the limitations period as to the plaintiffs in the *Anderson* cases. The teaching of these cases is that tolling is appropriate when the filing of a class action suit provides to defendants adequate notice of the claims being brought against them and of the potential plaintiffs who may participate in the resulting judg-

ment.[11] *Crown, Cork*, 462 U.S. at 353, 103 S.Ct. at 2397; *American Pipe*, 414 U.S. at 555, 94 S.Ct. at 767.

The facts in the instant case differ from the situation in *Crown Cork* and *American Pipe* because of the existence of Local Rule 34. In this district, the burden to move in a timely fashion for either class certification *or an extension of time for* class certification is placed squarely on plaintiff by operation of Local Rule 34.[12] Defendants reasonably relied upon the *Loughman* plaintiffs' failure to move for class certification as required by the local rules as abandonment of the class action.

The Court has cautioned against reading the tolling rule in such a way which would allow abuse by class members, *Crown, Cork*, 462 U.S. at 354, 103 S.Ct. at 2397 (Powell, concurring), and we find that applying that rule here would permit plaintiffs to take unfair advantage of defendants' reliance on the local rules. Therefore, we find that the statute of limitations was tolled, if at all, only for the six months from April, 1983 until October, 1983.

▮ Plaintiffs have made various other arguments for tolling, but they are wholly unsupported by the record and are made with disregard to plaintiffs' burden to come forward with an evidentiary showing. For instance, plaintiffs assert that defendants altered documents to conceal the coal companies' involvement with the railroad project but fail to produce (or cite) a shred of evidence to that effect. Similarly, plaintiffs suggest that defendants' deni-

**10.** Local Rule 34 requires a plaintiff to move for class certification within 90 days of filing the complaint.

**11.** As Justice Powell's concurrence emphasizes, notice is the basis for the *Crown, Cork* rule; therefore, a plaintiff is not allowed to assert tolling for claims that differ from those asserted in the original class suit. 462 U.S. at 354–55, 103 S.Ct. at 2397–98. The *Anderson* plaintiffs may not benefit from any tolling on their civil rights claims, therefore, due to the absence of such claims from the original *Loughman* complaint.

**12.** Subsection (c) of Local Rule 34 provides: Within 90 days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the

plaintiff shall move for a determination under subdivision (c)(1) of Rule 23, Federal Rules of Civil Procedure, as to whether the case is to be maintained as a class action. In ruling upon such a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where it is held that the determination should be postponed, a date will be fixed by the Court for renewal of the motion before the same judge.

al of liability during the Loughman litigation supports tolling of the statute, but as a matter of law the time limit for filing suit is not extended by reason of the adversary's refusal to agree that the claim is valid. *Firestone & Parson, Inc. v. Union League of Phil.*, 672 F.Supp. 819, 822 (E.D. Pa.), *aff'd w/o op.*, 833 F.2d 304 (3d Cir. 1987).

### b. *Sufficiency of the RICO claims*

In light of our determination that plaintiffs' RICO claims are untimely, we need not reach the question of their sufficiency. We note, however, that given plaintiffs' failure to make an evidentiary showing of the alleged misrepresentations made by defendants, plaintiffs have not established a prima facie case of the RICO violations. Nor can we find, without admissible evidence concerning the content of the alleged representations, that such misrepresentations are material or that plaintiffs' reliance on such misrepresentations was justifiable.[13]

### 2. Plaintiffs' Civil Rights Claims
#### a. *Statute of Limitations*

■ For plaintiffs' Section 1983 claims, we must adopt the statute of limitations of the most analogous state law cause of action. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). Plaintiffs have alleged in general that they have been deprived of their due process and equal protection rights by defendants' conduct, and in particular that their property was taken in violation of their due process rights. *E.g.*, Anderson complaint, ¶¶ 103–06.

Pennsylvania's residual statute for actions or proceedings "to recover damages for injury to person or property, which is founded on negligent, intentional, or otherwise tortious conduct" is two years, as codified at 42 Pa.Cons.Stat. § 5524(7) (Purdon Supp.1990). For the reasons set forth above, we find that plaintiffs have failed to make any showing that they filed within two years of the accrual of their civil rights claims.

### b. *Sufficiency of Civil Rights Claims*

■ Even if plaintiffs' Section 1983 claims were timely, we find they are insufficient as a matter of law. To set forth a cause of action under 42 U.S.C. § 1983, a plaintiff must show at least two elements. First, a plaintiff must show that the defendant deprived plaintiff of a right secured by the Constitution or the laws of the United States. Second, plaintiff must prove that the defendant acted under color of state law. Plaintiff bears the burden of proof on both of these issues. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

In these cases, defendants are purely private parties. Plaintiffs do not allege that defendants commenced condemnation proceedings or any other formal action against them which would convert their conduct into state action. Even if defendants had commenced such proceedings, a private party is not transformed into a state actor because the state acts on its recommendation or motion. *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

### 3. Pendent State Claims

Having determined that summary judgment on the federal claims in these cases is appropriate, we decline to retain pendent jurisdiction with respect to the remaining state law claims.

If it appears that the federal claim is subject to dismissal under Fed.R.Civ.P. 12(b)(6) or could otherwise be disposed of in a motion for summary judgment under Fed.R.Civ.P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.

*Tully v. Mott Supermarkets, Inc.* 540 F.2d 187, 196 (3d Cir.1976) (citing *United Mine*

---

**13.** We also question whether the *Anderson* cases, like their *Loughman* counterparts, fail to present a pattern of racketeering activity sufficient to pass muster under the continuity requirement of RICO, as defined by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

*Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Accord *Cito v. Bridgewater Township Police Dept.,* 892 F.2d 23, 26 (3d Cir.1989). There are no extraordinary circumstances present in these cases; we decline to exercise pendent jurisdiction over plaintiffs' state law claims.

### B. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs have filed a Motion for Partial Summary Judgment seeking this Court's determination that defendant Monongahela Railroad did not have the power of condemnation as to plaintiffs' properties. As noted above, this question already was addressed by the Honorable Hubert I. Teitelbaum during the *Loughman* litigation by Order dated August 6, 1986 (Civ. No. 83–921, Docket # 272). The court determined that defendant Monongahela had the aforementioned condemnation power. Although plaintiffs attempt to relitigate the issue in this second set of related cases, they have not presented any reason to deviate from the reasoning in the *Loughman* cases. We will adopt Judge Teitelbaum's reasoning in denying plaintiffs' Motion for Partial Summary Judgment.

### CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of defendants and against all plaintiffs on the federal claims in the complaints. We decline to exercise pendant jurisdiction over the state law claims.