

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2004

# Henglein v. Colt Ind Operating

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3748

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Henglein v. Colt Ind Operating" (2004). *2004 Decisions.* Paper 979.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/979

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3748
No. 03-1745
_____

GEORGE W. HENGLEIN, ET AL

v.

COLT INDUSTRIES OPERATING CORPORATION INFORMAL
PLAN FOR PLANT SHUTDOWN BENEFITS FOR SALARIED
EMPLOYEES AND COLT INDUSTRIES OPERATING
CORPORATION PLAN FOR MAINTAINING BENEFITS FOR SALARIED
EMPLOYEES IN PARITY WITH BENEFITS GRANTED TO UNION
REPRESENTED EMPLOYEES,
Appellant in No. 03-1745

Ezra E. Best, John K. Douglas, William M. Hyams,
Ronald A. Montgomery and Harry B. Van Hossen,
Appellants in No. 02-3748

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable Donald J. Lee
(D.C.No. 86-2021)
_____

Argued on October 22, 2003

Before: ALITO, FUENTES and ROSENN, Circuit Judges.

1

James J. Ahearn (argued)
825 B Morewood Avenue
Pittsburgh, PA 15213

*Attorney for Appellants in No. 02-3748*

Mark G. Arnold (argued)
Husch & Eppenberger
190 Carondelet Plaza
Suite 600
St Louis, MO 63105-3441

William H. Powderly, III
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222

*Attorneys for Appellant in No. 03-1745*

_____
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

In connection with the 1982 closing of the Crucible Midland Mill by Colt Industries Operating Corporation, ("Colt") employees of Colt filed claims for plant shutdown benefits in 1983 under the Informal Plan. After over 10 years of litigation

concerning the existence of the Informal Plan and the applicable statute of limitations, the District Court, in an opinion and order filed on January 2, 2003, held that the statute of limitations barred the claims of the late-filing plaintiffs and that plaintiffs Henglein and Schake were eligible for shutdown benefits. Five employee plaintiffs, Ezra E. Best, John K. Douglas, William M.Hyams, Ronald A. Montgomery and Harry B. Van Fossen, appeal the District Court's determination that they are barred by the applicable six-year statute of limitations from asserting their claims for shutdown benefits under Colt's Informal Plan. They do not dispute that they joined the suit after the expiration of the six-year statute of limitations, but argue that they are not barred from asserting their claims because their addition amounts to an amendment that can "relate back" to the original complaint under Rule 15(c)(1) and (2). Because we agree with the District Court that the five employees do not meet this Circuit's requirements for relation back under Nelson v. County of Allegheny, 60 F.3d 1010, 1012-13 (3d Cir. 1995), *cert. denied*, 516 U.S. 1173 (1996), we affirm.

In its cross-appeal, the Plan contests the District Court's finding, made in a separate order, that employee plaintiffs Henglein and Schake are entitled to Informal Plan benefits. We disagree with the District Court and hold that Henglein and Schake are not entitled to these benefits because they left Crucible to accept other employment before the end of 1982. Accordingly, we reverse the District Court on this issue.

**I.**

3

In 1982, Colt Industries Operating Corporation, through its subsidiary Crucible, Inc.[1] decided to sell or close operations in its Midland, PA, plant. The decision was publicly announced on March 10, 1982. Crucible desired initially to sell Midland as an ongoing concern, along with both physical plant and experienced employees. To that end, after the announcement, they presented employees with Continuance Agreements, which promised incentives for employees to stay in Crucible's employ until the end of 1982, rather than resign and seek employment elsewhere. Mr. Schake resigned effective December 30, 1982 to accept a position with Pennsylvania Engineering Corporation and Mr. Henglein resigned effective August 15, 1982 to accept a position at Cyclops.

Prior to the decision to sell or close, Crucible maintained a defined severance policy, consisting of a "Basic Severance Plan" and a "Key Executive Severance Plan" (together, "the Severance Plans"). See Frank v. Colt Industries, 910 F.2d 90, 93(3d Cir. 1990). Also in place was the Colt Industries Operating Corporation Informal Plan for Plant Shutdown Benefits for Salaried Employees ("the Informal Plan") which existed in 1968 and 1969 incarnations. In Frank v. Colt Industries, a prior proceeding involving claims for severance pay, we held that Henglein and Schake were not entitled to severance pay under the Severance Plans because they voluntarily resigned to accept employment elsewhere on a date of their choosing. 910 F.2d at 101.

After over 10 years of litigation concerning the existence of the Informal Plan and

---

[1] For the sake of simplicity, the administrator of the ERISA Plans in question will be referred to as "Crucible."

the applicable statute of limitations, this court held in <u>Henglein v. Colt Industries Operating Corporation Informal Plan for Plant Shutdown Benefits for Salaried Employees</u>, 260 F.3d 201 (3d Cir. 2001) that the applicable statute was six years, and remanded for findings as to the five plaintiffs whose claims were filed more than six years after their termination. During that litigation, on October 23, 2002, plaintiffs Henglein and Schake ("Plaintiffs") moved to be declared eligible for Informal Plan benefits. In an opinion filed on January 2, 2003, the District Court held that the statute of limitations barred the claims of the late-filing plaintiffs. In an order filed on that same day, the District Court also held that the because there was no guarantee of employment after 1982, the departure of Henglein and Schake, although prior to the end of 1982, "was due to a 'plant shutdown'" and they are therefore entitled to shutdown benefits under the Informal Plan. Furthermore, the court held that resignation from employment in violation of the continuation agreement did not forfeit the benefits to which either man was otherwise entitled.

The plaintiff employees appeal the adverse judgement with respect to five plaintiffs whose claims are barred by the statute of limitations and the Plan cross-appeals with respect to Henglein and Schake.

## II.

The District Court had jurisdiction of plaintiff's claims pursuant to 28 U.S.C.

5

§1331 and 29 U.S.C. §1132(e), in that they sought benefits from an employee benefit plan and their cause of action arose after 1974. The Informal Plan cross-appeals from a judgement expressly designated as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and we exercise jurisdiction pursuant to 28 U.S.C. §1291. The construction of an unambiguous ERISA plan is a matter of law, Kemmerer v. ICI Americas, Inc., 70 F.3d 281, 288-89 (3d Cir. 1995), cert. denied, 517 US 1209 (1996). We exercise de novo review over both appeals.

### III.

In Henglein v. Colt Industries Operating Corporation Informal Plan for Plant Shutdown Benefits for Salaried Employees, 260 F.3d 201 (3d Cir. 2001), we held that the applicable statute of limitations in this case is six years. While the five late-filing plaintiffs concede that they all filed more than six years after their termination, they argue that their filing constitutes an amendment which can relate back to the date of the original pleading under Federal Rule of Civil Procedure 15(c). We disagree.

Federal Rule of Civil Procedure 15(c) permits amendment of a pleading to relate back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

> (3) the amendment changes the party or the naming of the

6

party against whom a claim is asserted if the foregoing provision (2) is satisfied and ... the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.... Fed.R.Civ.P. 15(c).

The late filers rely on Benfield v. Mocatta Metals Corp., 26 F.3d 19 (2d Cir. 1994), a Second Circuit case which held that a plaintiff's claim may "relate back" unless it produces an "unfair surprise," and argue that they need only therefore satisfy the requirement of Rule 15(c)(2).   However Benfield is not the law in this Circuit.[2]   Rather, this court in  Nelson v. County of Allegheny held that "all *three* conditions specified in Rule 15(c)(3) must be satisfied" for the claims of late-filing plaintiffs to relate back to timely-filed claims.  Nelson, 60 F.3d at 1014.  Therefore, as the District Court correctly pointed out, the late-filing plaintiffs' claims are clearly barred because they fail to meet the second prong of Rule 15(c)(3).  Colt did not know, nor should it have known, before the expiration of the limitations period, that, but for mistake, it would have been sued directly by the five plaintiffs.  The District Court found no evidence in the record demonstrating that the plaintiffs' late filing was due to mistake.  Rather, the five plaintiffs knew about the existence and terms of the informal plans long before filing and "sat on

---

[2] Nor would it require the outcome urged by the appellants in this case.  Benfield did not interpret the text of Rule 15(c), but only held that the amended complaint in question was improperly dismissed because there was no unfair surprise and therefore either relation back under Rule 15(c) or tolling of the statute of limitations under American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) could apply.

their rights" waiting for the lawsuit to progress. This court made clear in Nelson that "although the relation-back rule ameliorates the effect of statutes of limitations," when there has been no mistake, late-filing plaintiffs cannot "take advantage of the rule to perform an end-run around the statute of limitations that bars their claims" Nelson, 60 F.3d at 1015.

## IV.

Turning to the cross-appeal, the Informal Plan contends that the District Court erred in finding that Henglein and Schake were eligible for Informal Plan benefits. The Informal Plan argues that because Henglein and Schake voluntarily resigned to accept other employment, they were not "terminated," and therefore do not qualify for shutdown benefits under the plain language of the Plan. We agree.

When interpreting ERISA plans, the starting point is the "words of the Plan" Bollman Hat Co. v. Root, 112 F.3d 113, 116 (3d Cir. 1997) and the parties remain bound by the "appropriate objective definition of the words they use to express their intent." In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir. 1996). However, the court may also interpret the plan based on "the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor…as is not inadmissible." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989).

Both the 1968 and 1969 versions of the Informal Plan are clear about the eligibility

8

requirements for shutdown benefits.  The 1968 Plan states:

> Typical situations to which this benefit applies are *job eliminations* as a result of reorganization, department or plant shutdown, loss of effectiveness as a result of age and economic cutback.

The 1969 Plan explains:

> These guidelines may provide benefits for such employees where employment *is terminated* as a result of either or both of the following circumstances:
> a.    *Job elimination* as a result of reorganization, or department or plant shutdown,
> b.    *Economic layoff* deemed to be permanent.
>       (*emphasis added*)

Clearly, a requirement for eligibility is termination or job elimination. On this point, the District Court observed that the cessation of operations was a "dead certainty" and the continuation agreements postponed Schake and Henglein's termination until the end of 1982, after which there was no guarantee of employment.  In other words, as Henglein and Schake argue, they resigned in anticipation of an impending shutdown, and therefore their resignations amounted to terminations.  These arguments, however, are unconvincing.  Although it was publicly known that the mill was to be sold or shut down, and many employees were indeed terminated during the period immediately before and after the resignations, Henglein and Schake did not remain at Crucible until termination, at which point they would have qualified for severance, continuation bonuses and shutdown benefits.  Instead, they chose to leave in favor of other, full-time employment. Since neither Henglein nor Schake were "terminated" but voluntarily resigned before they

9

could be terminated, they are ineligible for benefits.

Our holding in <u>Frank v. Colt Industries</u> supports the rejection of benefits here. In <u>Frank</u>, the plan stated that "severance allowance will be paid only if the employee remains at work to a date established *by the Company*." <u>Frank</u>, 910 F.2d at 101. The Plaintiffs in <u>Frank</u> argued that "because they left the company as a 'direct result' of the shutdown of the Midland plant, they were 'effectively terminated'" and therefore entitled to severance benefits under the Severance Plans. The Court held that because the employees departed at a date prior to any date set by the employer, they are not entitled to severance pay. In so holding, the Court observed: "Common sense teaches that as long as an employer offers to pay you tomorrow, you cannot get severance pay for quitting today." <u>Id</u>. In other words, as long as you can come to work tomorrow and be paid for your time, you are not "terminated" today.

Finally, the purpose of the Informal Plan guides our interpretation of "terminated" as that term applies in this case. As argued by Colt, stated in the benefit guidelines and evident from the benefit structure, the Informal Plan was intended to address terminations that "might result in hardship for older and long service employees"— in other words, to ameliorate the economic hardship an employee would suffer if his job were terminated and, because of his age, he were unable to find new work.[3] Because Henglein and Schake

---

[3]This is also evident from the age requirements for benefit eligibility. The 1968 plan is administered by the Retirement Board and eligible employees must be at least 60 but younger than 65. At 65, an employee out of work would be eligible for full retirement benefits. Under the 1969 plan, the termination benefit is entitled: "Hardship Retirement."

10

resigned to take new full-time positions, they clearly don't come within the class of employees the Informal Plan was intended to benefit.

## V.

For these reasons, we will affirm the judgment of the District Court that the statute of limitations bars the claims of the late-filing plaintiffs, but reverse on the Plan's cross-appeal. We conclude that Henglein and Schake are ineligible for benefits under the Informal Plan.

11