**Paul MILLER, Plaintiff,**

v.

**FORTIS BENEFITS INSURANCE COMPANY, and Resorts International Hotel, Defendants.**

Civil Action No. 03–4428(SSB).

United States District Court,
D. New Jersey.

March 16, 2005.

Robert K. Merenich, Esq., Gemmel, Todd & Merenich, P.A., Linwood, NJ, for Plaintiff.

Randi F. Knepper, Esq., Del Mauro, Digiaimo, Knepper & Heck, Morristown, NJ, for Defendant Fortis Benefits Insurance Company.

Kevin S. Smith, Esq., Avolio & Hanlon, P.C., Lawrenceville, NJ, for Defendant Resorts International Hotel.

## OPINION REGARDING FORTIS BENEFITS INSURANCE COMPANY'S RENEWED MOTION TO DISMISS THE AMENDED COMPLAINT

BROTMAN, District Judge.

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC § 1001, *et. seq.*, to clarify disability benefits under an employer's private long-term disability plan. Defendants move to dismiss arguing that Plaintiff's claim is time-barred by the insurance policy's statute of limitations. Plaintiff contends that under ERISA, the cause of action accrues upon a clear communication of a denial of benefits and not from the original date of disability. The issue before the Court therefore distills into one legal inquiry under ERISA, the Long–Term Disability Policy, and applicable federal common law: when did the cause of action accrue in this claim for underpayment of benefits?

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Paul Miller (hereafter "Miller" or "Plaintiff") became disabled on October 6, 1986, after undergoing aortic valve replacement. (Pl.'s Compl. at ¶ 6). At the time of his disability, Miller was employed by Defendant Resorts International Hotel (hereafter "Resorts"). (Pl.'s Compl. at ¶ 4). Resorts provided Long Term Disability benefits (LTD) through a policy originally issued by Mutual Benefit Life Insurance Company (hereafter "Mutual Benefit") (Pl.'s Compl. at ¶ 3), and later

acquired by Defendant Fortis Benefits Insurance Company [1] (hereafter "Fortis"). (Pl.'s Compl. at ¶ 2). In April 1987, Plaintiff filed a claim for benefits under the LTD policy, which listed October 6, 1986 as the date of disability. (Pl.'s Compl. at ¶ 7).

Resorts reported to Mutual Benefit that Plaintiff was a "casino floor worker," making $690.70 a week, and Miller began receiving benefits under the policy based upon that figure. (Pl.'s Compl. at ¶¶ 5, 9). This figure forms the basis of the current dispute, as Plaintiff claims that the base salary used to calculate his benefits was "erroneous". (Pl.'s Compl. ¶ 13). Plaintiff asserts that the pay used to calculate his benefit should have included forty hours regular pay, equaling $690.70, plus three hours overtime, equaling $77.70, for a total of $768.40. (Pl.'s Br. in Op. to Defs.' Mot. to Dismiss at Ex. A). Instead, Miller has been receiving benefits based upon his regular pay of $690.70, without including the overtime pay. (Pl.'s Compl. at ¶ 9).

Miller realized the alleged mistake in November 2002 and asked Fortis to correct the problem. (Pl.'s Compl. at ¶¶ 13,-14). In a letter dated November 12, 2002, Fortis asked Resorts to check for information about Miller's wages and acknowledged it was "obligated to attempt to verify the information now being provided by Mr. Miller." (Pl.'s Br. in Op. to Defs.' Mot. to Dismiss at Ex. C, *see also* Pl.'s Compl. at ¶ 15). Fortis responded to Plaintiff in a letter dated March 25, 2003, stating that Resorts no longer had employment information for the Plaintiff [2], and that the six (6) year period of limitations stated in the policy for asserting a claim

---

1. It is not clear when, or under what circumstances, Fortis acquired the policy from Mutual Benefit.

2. Resorts is only required to keep employment information for seven (7) years.

had passed. (Pl.'s Br. in Op. to Defs.' Mot. to Dismiss at Ex. D).

After the Plaintiff filed his complaint in the Superior Court of New Jersey, Fortis removed the case to the Federal District Court, based upon federal question jurisdiction. At the time of removal Fortis asserted that the policy in question falls under the Employee Retirement Income Security Act of 1974 (ERISA). Resorts joined in the motion. (Pet. For Removal)

Defendants' Motion to Dismiss the complaint for failure to state a claim upon which relief can be granted seeks dismissal of both Counts I and II of Plaintiff's First Amended Complaint ("the Complaint"). Defendants move to dismiss both counts based on the statute of limitations. In the alternative, the Defendants ask the Court to dismiss Count II of the Complaint, contending that Miller cannot concurrently pursue breach of fiduciary duty and denial of benefits claims. By a letter to the Court dated August 3, 2004 Resorts joined in Defendant Fortis' Motion to Dismiss.

Plaintiff opposes the Motion to Dismiss on three grounds. First, Plaintiff contends that the statute of limitations did not begin to run until there was a clear repudiation of benefits. Arguing that there was no clear repudiation in the instant case until March 25, 2003, Plaintiff claims that the cause of action did not accrue until then. Second, Plaintiff argues that the statute of limitations should accrue later since his claims involve a miscalculation of benefits as opposed to a denial of benefits. Third, Plaintiff argues that since Count II of the Amended Complaint seeks equitable relief it is "not inconsistent" with Count I.

## II. THE LEGAL STANDARD

In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the Plaintiff. *ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). The Court cannot dismiss Plaintiff's Complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984).

■ Notwithstanding the stringent standards of 12(b)(6) a complaint "may be subject to dismissal ... when an affirmative defense like the Statute of Frauds appears on its face." 29 F.3d at 860. "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting this procedure "streamlines litigation by dispensing with needless discovery and fact-finding"). In the context of 12(b)(6) motions made on statute of limitations grounds, the Third Circuit has directed courts to ask whether the "time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Cito v. Bridgewater Township Police Dep't*, 892 F.2d 23, 25 (3d Cir.1989) (citations omitted).

## III. ANALYSIS

■ Resolving this dispute requires consideration of (1) when the statute of limitations began to run and, (2) how long the period endures. For the purposes of this motion, the parties have agreed that the statute of limitations period is six

years.[3] Consequently, the central disagreement between Plaintiff and Defendants focuses on when the cause of action accrued. To analyze this issue the Court considers the language and impact of the policy, the common law rules of federal courts, and the ERISA statute.

### The Policy

■ The terms of the LTD policy defined a specific period of time in which the plaintiff must bring a cause of action to enforce the policy.[4] The policy's language effectively creates both a period of limitation for actions and sets an "accrual" date under which the period of limitation begins to run. Two provisions of the policy define the limitation period:

### Legal Actions

No action at law or in equity may be brought to recover on the Policy any earlier than 60 days after the required proof of loss has been given. No action may be brought after the expiration of the statute of limitations in the state having jurisdiction. In no event may action be brought any later than 6 years after the time required for submitting the proof has elapsed.

Since this provision ties the "accrual" of the limitation period to the proof of loss, that portion of the policy is the most relevant to this litigation. It provides:

### Proof of Loss

Written proof of loss must be given to Us at Our Home Office or one of Our Regional Group Claims Offices. For any loss for which the Policy provides periodic payment, the written proof of loss must be given within 90 days after the end of the first month or lesser period for which we may be liable. After that, proof must be given at such interval as we may reasonably require. For any other loss, the written proof of loss must be given within 90 days of the date of loss.

Synthesizing these two provisions, the policy provides a six year period of limitation for causes of action. In addition, the policy establishes that the period begins to run no later than the "the time required for submitting the proof".

The plain meaning of the ERISA plan therefore establishes that the limitations period began to run at the conclusion of the period in which Plaintiff was required to submit proof of loss. The Court concludes, as Defendants argue, that the period of limitation began to run in July 1987. The method used to reach this determination follows.

The "Proof of Loss" section refers to the end of the "first month ... for which we may be liable." The policy establishes that the insured must be totally disabled for six months before benefits are payable.

**3.** "Plaintiff concedes that New Jersey's six year Statute of Limitations for contract actions applies to Plaintiff's ERISA action for underpayment of benefits....Plaintiff understands that a six year limitations period is likewise asserted in [the policy] document. For the purposes of this motion, Plaintiff accepts six years as the applicable limitations period." Pl's. Br. p. 3.

**4.** Under Rule 10(c) of the Federal Rules of Civil Procedure, "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes". Consistent with Rule 10(c), the Third Circuit has held that a court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Following this rationale, the Court relies on the ERISA plan document and the Complaint in analyzing Defendants' motions.

Since Miller was disabled on October 6, 1986, Fortis would first become liable in March or April 1987. The policy also provides that the proof of loss must be sent in writing to Fortis within 90 days of the period that Fortis first became liable. Thus, if Fortis first became liable in March or April of 1987 then the time that Miller needed to provide written proof of loss expired in June or July of 1987. Consequently, the plan dictates that Miller had six years from this time, in June or July of 1987, to file a claim.

The application of the policy advances and harmonizes with the purposes of having statute of limitation periods. For example, in New Jersey, statutes of limitations have two purposes. First, "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims". *Rivera v. Prudential Property & Casualty Ins. Co.,* 104 N.J. 32, 39, 514 A.2d 1296 (N.J.1986). The second purpose of statutes of limitations is to penalize delay and serve as a "measure of repose". *Id.* (citations omitted).

The United States Supreme Court articulated similar policies as bases for statutes of limitations in *Order of R. Telegraphers v. Railway Exp Agency, Inc.,* 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944). In *Railway Express* the U.S. Supreme Court held that the statutes of limitations are:

> [D]esigned to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Id.* at 348–349, 64 S.Ct. 582.

■ Consideration and application of these principles to this case demonstrates why Plaintiff's claims must be time-barred. As the Complaint shows, the alleged miscalculation of benefits occurred in or around April of 1987. Nonetheless, in response to Plaintiff's inquiry, Fortis investigated and discovered that Resorts no longer had employee records for Miller. In this case, therefore, there is not only a danger of stale and unavailable evidence but actually an absence of evidence. Consequently, barring a claim brought almost sixteen years later effectuates two of the policies behind statutes of limitations: (1) preventing parties from having to defend unexpected lawsuits brought after a long delay; and (2) protecting parties' interests by avoiding lawsuits where evidence may have become lost or stale due to the passage of time.

In conclusion, finding Plaintiff's claims are time-barred effectuates the purposes of having a period of limitation. By having such a period, and, in particular by including such a provision in the contract, Fortis and Resorts could be certain about their liabilities and potential liabilities for claims.[5] Therefore, the Court concludes that the facts of this case offer particularly compelling reasons to enforce the period of limitation. Since Miller failed to bring the cause of action within six years of April 1987, the LTD policy would bar Plaintiff's claims. Defendants' motion would there-

---

**5.** The Court also concludes that Fortis' status as a "successor" to the original insurer bolsters this analysis. Having succeeded to another insurer's obligation to payout on the long-term disability policy, Fortis was not even a party to the original transaction whereby Resorts provided salary information on Miller.

fore be granted unless Miller could show that the period of limitation tolled or, for some other reason, the Court should not enforce the policy.

*Plaintiff's Arguments Against Applying the Accrual Date of the Policy*

■ As a movant seeking to dismiss a complaint on the basis of an affirmative defense, Fortis bears the burden of proving that Miller's claims are time-barred. *See e.g. Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.,* 311 F.3d 581, 585 (3d Cir.2002). As analyzed above, the Court holds that the Defendants have satisfied their burden. For this reason, the Court considers the Plaintiff's arguments with particularity to determine if any other reason exists to deny Defendants' motion.

■ Plaintiff first argues that the accrual date is determined by common law. Miller then cites Massachusetts, New York and Second Circuit cases for the proposition that an ERISA cause of action accrues when there is a "clear repudiation". (Pl.'s Br. In Opp. at 3). Since Miller actually received benefits and merely alleges that he was underpaid, Plaintiff argues that the "clear repudiation" occurred in March 2003. The Court rejects both Plaintiff's reasoning and conclusion. In short, Miller's analysis fails because it ignores the purpose of having a statute of limitations and offers no justification for the Court to depart from the unambiguous language in the policy.[6] Since Defendants produced sufficient evidence to persuade the Court that the policy should have been enforced, Plaintiff's arguments were ineffective absent a showing that the policy should not be applied.

The Court observes, initially, that Plaintiff's cited authority does not articulate the rule in the Third Circuit. Instead, Plaintiff cites a minority position and only references a small number of cases, some of which have been questioned or narrowed by subsequent opinions in the same jurisdiction. Regardless of the weight given to those cases, however, Plaintiff's arguments must fail because Defendants have proven that the policy established an accrual date of July 1987 and Miller has not effectively overcome that proof. Even if the Court were willing to apply the rule of "clear repudiation", Miller has not offered any statutory or case law support for why the Court can or should set aside the unambiguous terms of the policy and apply the "clear repudiation" rule.

■ When interpreting an ERISA plan, the starting point is the "words of the plan". *Henglein v. Colt Indus. Operating Corp. Informal Plan,* 91 Fed.Appx. 762, 766, 2004 WL 362297 (3d Cir.2004) *quoting Bollman Hat. Co. v. Root,* 112 F.3d 113, 116 (3d Cir.1997). This principal comes

---

**6.** The Court acknowledges that normally, "[d]etermining when a federal cause of action accrues is a matter governed by federal common law." *Keystone Ins. Co. v. Houghton,* 863 F.2d. 1125, 1127 (3d Cir.1988) *overruled by Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). The Court also understands that question of when a federal cause of action accrues is determined by federal law even when the federal court borrows the state statute of limitation period. *See e.g. Baron v. Allied Artists Pictures Corp.,* 717 F.2d 105, 108–109 (3d Cir. 1983) (affirming district court's holding that "when state statutes of limitations are borrowed, federal standards determine the question of accrual"); *see also Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *accord Gluck v. Amicor, Inc.,* 487 F.Supp. 608 (S.D.N.Y.1980). Consequently, the Court understands the basis for Plaintiff's arguments that federal common law rules should govern the dispute. Because Plaintiff's Complaint and pleadings fail to offer any justification for ignoring the terms of the policy, however, the Court must apply the terms of the policy.

directly from the ERISA statute, which requires "every employee benefit plan" to be "established and maintained" by a writing. *29 U.S.C. § 1102(a)(1)*. "Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan." *Musto v. American Gen. Corp.*, 861 F.2d 897, 910 (6th Cir.1988) (holding that a written employee benefit plan could not be modified orally).

The Third Circuit cited and relied on *Musto*, to hold that an employee benefit plan could not be modified orally. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990). Both the statute and the cases therefore affirm the Court's determination that the written policy should be given effect. The writing matters. By enforcing the written plan, the Court preserves the expectation of the parties. Moreover, the Defendants' argument for enforcing the terms of the policy are particularly strong in this case, where Miller had been receiving benefits in accordance with the terms of the plan for eighteen years.[7]

Plaintiff's other argument also must fail. Miller contends that this case differs from many others because it involves the periodic underpayment of benefits. He distinguishes the underpayment of benefits from a clear denial of benefits to argue that statute of limitations should be extended. The Third Circuit has not directly addressed this issue but has impliedly disfavored such an approach. *Henglein v. Colt Indus.*, 260 F.3d 201(3d Cir.2001) In *Henglein*, the Third Circuit considered extending the statute of limitations to each payment of a "continuing contract." The Plaintiff had argued that each time a payment became due that a new cause of action arose. The Third Circuit refused to apply such a rule to the *Henglein* case. Before doing so, however, the Third Circuit generally explained the theory:

> An agreement to provide support for life may be termed a continuing contract, and so may be an insurance policy to pay a monthly sum of money during a period of disability. The recurring question with such agreements is whether failure to pay each installment establishes a separate cause of action on each occasion a payment is withheld, or whether only one cause of action accrues for breach of the contract. Corbin on Contracts devotes substantial discussion to the subject and suggests simply that much depends on the circumstances. The treatise pithily comments, " 'accrual of the cause of action' has not one eternal and exclusively correct meaning, ordained by God or by the legislature. There is no 'infallible logic' that compels one application rather than another." 4 Arthur L. Corbin, On Contracts S 989, at 969 (1951).

*Henglein* at 213–214. Most significantly, in affirming the District Court's rejection of the continuing violation theory, the Third Circuit analyzed the problems "inherent in such an approach". *Id.* "A current claim for an ERISA violation affecting the retirement benefit of a hypothetical twenty year-old employee thus might accrue at age 65." *Id.* Unwilling to extend the statute of limitations out over nearly a

---

7. This analysis does not suggest that no one could ever demonstrate a sets of facts sufficient to overcome the strict enforcement of a policy. In this case, however, nothing in the complaint or motions provides a basis for ignoring the policy. The absence of such proofs speaks particularly loudly in this case since, as recounted in the procedural history, the Defendants had filed essentially the same motion before Plaintiff amended his complaint.

fifty year period, the court rejected plaintiff's arguments. *Id.*

For this reason, even if the Court found a compelling reason to set aside the plain meaning and effect of the ERISA plan, Miller's continuing violation argument must also fail. The "continuing violation" theory is not the rule in the Third Circuit and the Circuit Court of Appeals has refused to apply the theory in a similar situation. Like the plaintiff in *Henglein*, Miller's calculation occurred some time ago. Similarly, the moment of the miscalculation, like the *Henglein* plaintiff, was the moment the cause of action accrued.

## IV. CONCLUSION

Defendants have proven that the terms of the ERISA plan document would have allowed Plaintiff to bring an action to enforce the plan through July or August 1993. This lawsuit was initiated in 2003. The minority of courts' rules about the accrual of ERISA claims do not justify ignoring the policy. Moreover, finding that this lawsuit is time-barred furthers the express purposes of having limitations period. For these reasons, the first half of Defendants' motions to dismiss are granted; and the Court's ruling on the first part of the motion renders consideration of the second unnecessary.